### MOLLAN vs. GRIFFITH and others.

If the personal estate of a deceased debtor is not sufficient to pay his debts and legacies, and his executor exhausts the personal estate in the payment of creditors whose debts are chargeable both on the real and personal estate, a legatee, as between himself and the heir at law of the decedent, is entitled to stand in the place of such creditors, pro tanto, and to recover the amount of his legacy, or so much thereof as the personal estate would have paid out of the real estate descended to the heir.

But if the testator constitutes his personal estate a fund for the payment of his debts, and directs that the legacies shall abate if the fund is not sufficient for the payment of all his debts and legacies, it seems that the heir at law will be entitled to have a debt of the testator, which is either a specific or a general lien upon the real estate descended to him, paid out of the personal estate.

Where the personal estate has been exhausted, by the executor, in the payment of debts charged upon the real estate descended to the heir at law, the legatee, and not the executor, is the proper person to file a bill for marshalling the assets, and to obtain payment of the legacy out of the real estate.

Where the husband has received a legacy due to his wife, and has given security to refund in case of a deficiency of assets, the executor cannot, in a suit by the husband and wife against him to recover the rents and profits of her real estate, show such deficiency and set off the same against the claim for such rents and profits; the demands not being due in the same right.

THIS was an appeal from a decision of the vice chancellor of the first circuit, refusing to dissolve an injunction, on bill

and answer. Quintin Millen, who died in 1818, by his will directed, in the first place, that all his just debts, and his funeral expenses, should be paid as soon as convenient after his death. He then gave a legacy of $100 to his son Hugh, together with the interest on $5000 for his natural life; the interest after the death of Hugh to be paid to his sister Mrs. Shaw, for life, and the principal to be afterwards distributed among her children. He also gave a similar legacy to his two grand daughters, Louisa, now the wife of the defendant Griffith, and Jane, the wife of the defendant Ford, jointly; the interest to be paid for their support and maintenance until they arrived at the age of twenty-five, or were married, and the principal to be then paid to them. He also gave a legacy of $5000 to Mrs. Shaw and her children, the interest to be paid to her for life, and the principal after her death to belong to her children. He also gave to several other persons pecuniary legacies, amounting to nearly $3000, and made divers specific bequests. All these last mentioned legacies he directed to be paid as soon as conveniently could be done after his decease; and that if there should be any deficiency in the funds "upon which all the preceding bequests were predicated," the deficiency should be proportionably subtracted from the three first legacies; and if the funds should exceed the bequests, then one moiety of the excess was to be paid to his daughter Mrs. Shaw and her heirs, and the other moiety was to be equally divided between his son Hugh, and his nieces Louisa and Jane. At the time of his death, the testator was also the owner of lot No. 13, Oliver street, New-York, which was not devised by the will, and which descended to his son Hugh and to the two grand daughters, Louisa and Jane; Mrs. Shaw, the daughter, being an alien. Upon this lot a bond and mortgage had been given by the testator for $2500, which was afterwards paid by the executors. The complainant, with the other executors of Millen, who are now dead, took possession of the lot, paid the taxes, assessments and repairs thereon, and received the rents for several years; Louisa and Jane being then infants, and their uncle Hugh a drunkard. Hugh died shortly after the death of his father, intestate and without issue; and his interest in this lot descended to his two nieces, who were not aliens. After

the marriage of Louisa and Jane, their husbands, Griffith and Ford, received the legacies due to their wives, and each gave to the complainant a bond in the usual form, with security, to refund in case of a deficiency. They subsequently discovered that the house and lot in Oliver street belonged to their wives, as heirs at law of their grand father and uncle, and that Mollan had received the rents and profits thereof from the death of the testator. A suit was thereupon brought in the supreme court by Ford and his wife, for her portion of the rents and profits, and a judgment was obtained for the same ; which has since been collected. The complainant, after this recovery against him, still declining to pay the share of the rents and profits claimed by Griffith and wife, they instituted a suit therefor against him in the superior court of the city of New-York. After the issue was joined in that suit, the complainant filed his bill in this cause, alleging, among other things, that there was a deficiency in the estate of the testator, in the hands of the executor, to pay all the legacies to the children of Mrs. Shaw, she being now dead ; and this injunction was thereupon granted, staying the suit at law for the recovery of the rents and profits of the lot in Oliver street.

*J. Anthon*, for the complainant.

*J. O. Grim & R. Sedgwick*, for the defendants.

THE CHANCELLOR. The mortgage upon the Oliver street lot was to secure the payment of a debt contracted by the testator himself, and for which he gave his bond. The mortgage was therefore merely a collateral security for the personal contract. And, as between the owners of the real and personal estate, as the law stood at the death of the testator, the personal property was the primary fund for the payment of this debt. (*King* v. *King & Ennis*, 3 P. *Wms. Rep.* 358. *Lanoy* v. *The Duke of Athol*, 2 *Atk. Rep.* 444.) The revised statutes have changed this rule of equity ; but that cannot affect these parties, whose rights accrued previous to January, 1830. (1 R. S. 749, § 4.) But as between a legatee, either pecuniary or specific, and the heir at law, if a debt chargeable both on the real and personal estate is paid by the executor

out of the personal property, in the first instance, the legatee

will be permitted to stand in the place of the original creditor, pro tanto, and may recover the amount of his legacy, or to the extent of the personal estate so appropriated, out of the real estate descended to the heir. (*Culpepper* v. *Aston,* 2 *Cas. in Ch.* 117. *Tipping* v. *Tipping,* 1 *Peer Wms.* 730. *Lutkins* v. *Leigh, Ca. Temp. Talbot,* 53.) And if the debt is a specific lien upon the land, as in the case of a mortgage, the legatee may, in some cases, stand in the place of the mortgagee who has exhausted the personal estate, even as against the devisee. (*Lowndes on Leg.* 393.) The will in this case directs the debts to be paid in the first place, and makes a specific provision for the abatement of the three first legacies, rateably, if there should be any deficiency in the funds upon which all the bequests in the will were "predicated." As the house and lot in Oliver street do not appear to have been any part of the fund upon which the legacies were predicated, or out of which the testator intended his debts and legacies should be paid, it is at least doubtful whether the principle of marshalling assets in favor of legatees can be applied to this case. It is not necessary, however, that I should express any definitive opinion on that question here, as I am satisfied this complainant is not the proper person to call upon the heirs at law. As the mortgage debt was, at law, chargeable on the personal estate in the hands of the executor, it was properly discharged by the executor out of that fund. And if the children of Mrs. Shaw have any claim to stand in the place of the mortgagee, on account of the deficiency of the fund to pay their legacy, they are the proper persons to bring a suit for that purpose. As the case now stands, if the executor should succeed in recovering the amount from the heirs at law, and should neglect to pay it over to those legatees, it would not discharge the equitable lien upon the land, in their favor, if any such equitable lien exists.

There can be no set off in this case, of the rents and profits of the real estate, against the amount which may have been overpaid on account of the legacies to the defendants; because the demands are not due in the same right, and there is no pretence of insolvency on the part of the husbands of

the legatees or their sureties. The amount due to Griffith and wife, for the rents and profits of her real estate, is a demand due in right of the wife ; and if the husband should die before it was actually reduced to possession, it would belong to her by survivorship. The money paid for the legacy, on the contrary, was paid to the husband alone, and he and his sureties only are liable to refund in case of deficiency. The complainant should therefore have been left to his remedy on his bond, if the personal estate was insufficient to pay all the debts and legacies.

The fact, that the defendants refuse to allow him for the taxes and repairs upon the real estate, forms no ground for withdrawing the suit, for the mesne profits, from the jurisdiction of a court of law. If the complainant has any equitable claim of that kind, it will be a matter of course to allow such claim in that suit, to the same extent that it would be allowed in this court. In *Murray* v. *Governeur and others*, (2 *John. Cas.* 342,) Kent, chief justice, says : " The action for mesne profits is a liberal and equitable action, and will allow of every kind of equitable defence." It is not stated in the bill what is the form of the action brought against the complainant in the superior court. But if the plaintiffs in that suit have affirmed the acts of the complainant, by bringing an action of assumpsit for the rents and profits actually received, that is also an equitable action, in which he will be allowed every charge which is proper, either by way of deduction from, or off set against, the monies received to the use of the infant heirs. The answer of the defendants explicitly and fully denies the allegation in the bill, that the complainant expended any thing for the support or maintenance of the infants, over and above the interest on their legacy.

It is unnecessary for me to express an opinion whether this bill could be sustained, for any purpose, if all the proper parties were before the court. I am satisfied the complainant has no equity appearing upon the bill and answer to entitle him to restrain the defendants, Griffith and wife, from proceeding in their suit at law to recover the rents and profits of the house and lot. The decision of the vice chancellor must therefore be reversed, with the costs of this appeal. The in-

junction must be dissolved ; and the costs of the defendants upon the original application to the vice chancellor are to abide the event of the suit.