TAYLOR *vs.* WENDEL.

*In the matter of the Estate of* GEORGE C. REED, *deceased.*

THE testator by his will bequeathed the sum of twenty thousand dollars in trust for his niece, and afterwards by a codicil devised to her a house and lot in lieu of a portion of the legacy. The premises devised were subject to a bond and mortgage at the time of his death, and the will contained only the usual direction to pay debts—*Held*, that the devisee took the land *cum onere*, and was bound to pay the mortgage, and interest accrued.

The rule of the Revised Statutes, that mortgages on land are not to be paid out of the general estate, will not be disturbed except by some clear and express provision of the will.

Where the testator gave one half of the residue of his estate to his niece for life, and on her death to her two children, share and share alike, with survivorship in case either of the children died before the mother, without issue, and the mother and one child died before the testator,—*Held*, that the share of the surviving child in the residue took effect instantly on the testator's death; and the deceased child having died without issue, after and not before his mother,—*Held*, that the survivorship did not take effect.

The general rule, that by the death of a legatee before the testator, his interest under the will lapses, relates only to the interest of the party so dying, and where there are other interests grafted or limited upon that of the deceased legatee, they do not necessarily fall.

Where a life tenant dies before the testator, but the party entitled in remainder survives him, the death of the life tenant only extinguishes the life estate, and the remainder-man is let in to the immediate right to the gift, the moment the will takes effect.

A will,.clearly expressed, must receive the interpretation the words compel, and cases or events not contemplated cannot be aided by judicial interposition.

Conditional limitations contingent upon some specified event, take effect only upon the occurrence of the precise event designated.

CAMBRELING & PYNE, *for Executors*.

The testator, George C. Reed, died 17th March, 1855. Mrs. Ann Henderson, a sister, died 13th October, 1850, leaving two children, John Henderson, and Jane Ann Taylor, wife of Christopher Taylor. John Henderson, her son, died about the 21st November, 1853, without issue, leaving his sister, Mrs. Taylor, surviving him. Mrs. Judith Norman, one of the nieces and legatees of the testator, died in his life-time, leaving her husband and children surviving her. The testator left no wife or child, parents, brother or sister, but the following next of kin, viz.: Mrs. Jane Ann Fowler (*alias* Thompson), daughter of a deceased brother, Thomas Reed, (and wife of Edward K. Fowler): Mrs. Jane Ann Taylor (wife of Christopher Taylor), daughter of testator's deceased sister, Mrs. Henderson; Mrs. Anne Robinson, (wife of William Robinson), and Mrs. Jane Holiday, widow; the two last being daughters of Chambers Reed, a deceased brother of the testator. Captain Reed sold the house and lot on Houston street, mentioned in the codicil, and subsequently bought a house, No. 45 West 31st street, in which he resided . at the time of his decease. For this house he paid $14,000, including a mortgage for $5000, executed by him on the purchase, and which remained unpaid at the time of his decease.

The following questions arise on the distribution under the will:

1st. Is the mortgage, and the interest upon it since Captain Reed's death, to be paid out of his estate, or does Mr. Wendel, as the trustee for Mrs. Fowler, take the house in 31st street, subject to the mortgage and the interest accruing since Captain Reed's death?

The testator in his will directs all his property to be sold and converted into .personalty, out and out, and directs his executor and trustee " to pay thereout all the debts and sums of money which I may owe at the time of my decease, as also all my funeral and testamentary expenses."

On behalf of Mrs. Fowler, it is urged, that the mortgage should be paid out of the estate generally. The house is devised in the codicil in the following words: " In lieu and instead of the sum of $11,500, part of the $20,000, in my said will given to my executor John D. Wendel, in trust for my niece, Jane Ann Fowler, I do hereby give and devise to the said John D. Wendel the house and lot which I now own, and in which I now reside, known as No. 685 Houston street, or in lieu thereof, such other house and lot as I may here-after purchase and occupy at my decease," in trust, &c.

The question is, whether the mortgage is to be paid out of the estate generally, or whether Mr. Wendel, as such trustee, takes it subject to the mortgage. (1 *Rev. Stat.* 749, *original paging, sec.* 4.)

2d. The testator gives one half of the residue of his estate to his niece, Mrs. Norman.

Mrs. Norman died in the lifetime of the testator, and her legacy lapsed.

The testator gives the other half of the residue of his estate to his sister, Mrs. Henderson, for life, and the will then proceeds: " and upon her decease, I give and bequeath the said one equal half part or share of the said residue of my estate unto the said John Henderson, and Jane Ann Henderson, children of my said sister, Mrs. Ann Henderson, to be equally divided between them, share and share alike, and to their respective issue, such issue taking the share to which the parent, if living, would have been entitled. But in case

either the said John Henderson or Jane Ann Henderson should die before their mother, without leaving lawful issue living, then the survivor to take the part or share of the one so dying."

Mrs. Ann Henderson having died in 1850, and her son John *after* her in 1853, unmarried and without issue, both before the death of the testator, the question arises whether the legacy to John lapses, or whether his sister, Jane Ann Henderson, now Mrs. Taylor, as the survivor, became entitled on the ground of the bequest to the son and daughter of Mrs. Henderson being a joint legacy, or by construing the will as meaning that " should either die *before they take, or their mother's death*," &c.

3d. As to the part of the estate in regard to which the testator died intestate, whether Mrs. Fowler, Mrs. Taylor, Mrs. Robinson, and Mrs. Holiday, being in the same relation to the testator, are to take each an equal share.

J. B. BRINSMADE, *for next of kin.*

I. Is the mortgage of $5,000 to be paid by the executor, or does Mrs. Fowler take the house, subject to that mortgage?

She is to take, subject to the mortgage.

1. Because the Revised Statutes provide that whenever any real estate, subject to a mortgage executed by any testator, shall pass to a devisee, such devisee shall satisfy such mortgage out of his own property, without resorting to the executor, unless there be an express direction in the will that such mortgage be otherwise paid. (1 *R. S.*, 749, *original paging.*)

2. The testator makes no express direction in his will that the mortgage shall be otherwise paid.

3. Nor was it the intention of the testator that it should be otherwise paid, by any implication that can be fairly drawn from the provisions of the will. By the will without the codicil, he sets apart the specific sums of $11,500 and $8,500, amounting to $20,000, for Mrs. Fowler, it being then his intention that she shall have $20,000. But in the codicil

he clearly departs from his original intention of giving her the specific amount of $20,000, and in lieu of $11,500 of said amount he devises to her the house that he shall occupy at the time of his death, whether it shall be worth more or less than that sum, and without declaring any intention that it shall be equivalent to $11,500, or of that value, or be made so equivalent.

4. It cannot be contended that, if the house of which Mrs. Fowler is made the devisee, had been free from incumbrance, and had, being so free, been worth less than $11,500, Mrs. Fowler would have had any claim upon the estate for the difference between the value of the house and $11,500—and this being the case, there is no reason why the statute does not apply, to its very letter. On the other hand, if the house had been worth more than $11,500, the executor would have had no claim for the difference.

II. The legacy to John Henderson has lapsed.

1. John Henderson and Jane Ann Henderson were to take each an equal half of the one half of the residuary estate, upon the decease of their mother.

2. The mother (Mrs. Henderson), having died before the testator, the portion of the estate devised to her passes one half to Jane Ann Henderson; and John Henderson having died without issue before the testator, and after his mother, the other half, to wit, the legacy to John Henderson has lapsed.

3. Jane Ann Henderson has no right to the half devised to John, as survivor of John, for the reason that the contingency by which she was to take as such survivor, to wit, should John die *before* his mother, has not happened.

4. Mrs. Henderson never having taken under the will, her daughter Jane Ann derives no title through her, and can take only what is expressly devised to herself by the express terms of the will.

5. The language of the will should be strictly followed, because Mrs. Henderson having died five years before the

testator, and John two years before him, and the will being alterable at the testator's pleasure, it is to be presumed, that, though such contingencies may not originally have been contemplated by him, he was content to allow the devise to stand as originally made.

6. Where property is directed to be divided equally among three individuals, and one of them dies in the lifetime of the testator, the share of such person does not vest in the survivors, but sinks into the residue. (*Commonwealth* vs. *Nase*, 1 *Ashmead*, 242 ; *Frazier* vs. *Frazier*, 2 *Leigh*, 642 ; *Nelson* vs. *Moore*, 1 *Ired. N. C. R. Eq.*, 31.)

7. The devise is not to a " fluctuating class" (as, for instance, the children of Mrs. Henderson), to be ascertained at the death of the testator, but to the two children by name, share and share alike. There can, therefore, be no right of survivorship in Jane Ann Henderson.

8. It has been held, that even in the case where the objects are to be ascertained at some period or event, which happens in the testator's lifetime, the subsequent decease of any member of the class would occasion the lapse of his share. Thus, if the gift be to the children of A, who shall be living at the decease of A, as tenants in common, and A happens to die in the testator's lifetime, leaving four children, A, B, C, and D, one of whom afterwards dies in the lifetime of the testator, the one fourth share of such deceased child would lapse. (*Allen* vs. *Callow*, 2 *Ves.* 289.)

*A fortiori*, would such share have lapsed if the devise had been on the death of A to his children, A, B, C, and D, or the individuals answering the description, as tenants in common ?

9. An express disposition cannot be varied by inference or argument from the other parts of the will, much less can the obvious construction of a will be controlled by the inconvenient or unmeritorious nature of the bequest. (*Dayton on Surrogates*, 376, (*Ed.* 1855), *and cases cited.*)

10. Where no ambiguity exists, the court cannot speculate about the testator's intention, in opposition to his will as written. (*Arcularius* vs. *Geisenhainer*, 3 *Brad.*, 64.)

THE SURROGATE.—The testator died March 17, 1855. By his will, he bequeathed twenty thousand dollars in trust for his niece, Jane Ann Fowler; and by a codicil, "in lieu and instead of $11,500, part of the $20,000" given in the will, he substituted the devise of a house and lot. It is contended that a mortgage of five thousand dollars upon the devised premises should be paid out of the personal estate. My opinion does not agree with this view. The provision of the Revised Statutes that mortgages are not a charge upon the general estate, but the devisee must take the land *cum onere*, is never disturbed unless by some clear and express direction in the will. The testamentary instrument, in the present instance, contains, on that subject, nothing more than a general provision that "all the debts and sums of money" which the testator should owe at the time of his death, were to be paid by the executors. That is merely the usual direction as to the payment of debts, and shows no signs of an intention to modify the statutory rule. The devisee cannot, therefore, have either the principal, or the interest in arrear at the time of Mr. Reed's decease, paid out of his estate. The land devised must bear its own burdens.

The residuary clause of the will, under consideration, is as follows: "As to all the rest, residue and remainder of my estate, of whatsoever nature, to be converted into cash, out and out, as hereinbefore directed, real and personal, I order and direct that the same, when so converted into cash, be divided by my executors into two equal parts or shares; and one of the said equal parts or shares of the said residue of my estate, I give and bequeath unto my said sister, Mrs. Ann Henderson, for her use and benefit, for and during the term of her natural life; and upon her decease, I give and bequeath the said one equal half part or share of the said residue of my estate unto the said John Henderson and Jane Ann Henderson, children of my said sister, Mrs. Ann Henderson, to be equally divided between them, share and share alike, and to their respective issue, such issue taking the share to which the parent, if living, would have been entitled; but in case

either the said John Henderson or Jane Ann Henderson should die before their mother, without leaving lawful issue living, then the survivor to take the part or share of the one so dying." Mrs. Henderson and her son John both died before the testator—the former in 1850, and the latter in 1853, without issue. The point arises whether the bequest or any portion of it has lapsed. The gift is of a life estate to the mother, with remainder to her two children. The children were to take, as tenants in common, " share and share alike," and not as joint tenants. The general rule, that by the death of a legatee before the testator, his interest under the will lapses, relates only to the interest of the party so dying, and where there are other interests grafted or limited upon that of the deceased legatee, they do not necessarily fail. Ordinarily, so long as the event upon which the testator has made his bounty contingent takes place, it would seem to be indifferent whether it occur in the testator's lifetime or after his death, provided the party designed to be benefited be living. Where a life tenant dies before the testator, but the party entitled in remainder survives him, the death of the life tenant only extinguishes the life estate, and the remainder man is let in to the immediate right to the gift the moment the will takes effect. (*Mowatt* vs. *Caxow*, 7 *Paige*, 328.) The extinction of the first interest carved out of the estate only accelerates the right of the second taker. I am clear, therefore, that if both Mrs. Henderson's children had been living at the death of Mr. Reed, they would have been entitled to their respective shares of half the residue. One of them, however, died before the testator, and his share lapsed, unless we can find some provision reaching this contingency, and giving over the share to some other person; in which case, the limitation over would be good, notwithstanding the event on which it depended occurred before the testator's decease. The residuary clause gives this remainder to the two children, " to be equally divided between them, share and share alike, and to their respective issue, such issue taking the share to which the parent, if living, would have been entitled." But

John died without issue, so the provision for issue does not apply. "But," the residuary clause proceeds, "in case either the said John Henderson or Jane Ann Henderson should die before their mother, without leaving lawful issue living, then the survivor to take the part or share of the one so dying." Here are two conditions : John died "without leaving lawful issue living," and that condition is fulfilled; but he did not die "*before* his mother," and that condition is not fulfilled. The sister now claims John's share as "survivor," on an event or contingency different from the one named in the will— that is, the testator declared she should take John's share if he died before his mother, and she claims John's share when he died after his mother. This cannot be. The will is not so written. It is possible, indeed I think probable, that if the testator had contemplated the state of facts which has occurred, he would have provided for it, in the way this claim of survivorship supposes; but the court cannot adopt a rule of construction on conjecture, or against the plain import of terms. A will, clearly expressed, must receive the interpretation which the words compel, and cases or events not contemplated cannot be aided by judicial interposition—for that would be making a will, not construing one. Again, there is no rule better settled than that any conditional limitation over of a legacy, upon some specified event, condition, or circumstance, takes effect only upon the occurrence of the precise event specified. One or two cases will illustrate this view. In *Humberstone* vs. *Stanton*, (1 *Vesey & Beames, R.*, 385), there was a gift to the testator's son, Joseph, on the completion of his apprenticeship, but if he died before, the legacy was limited over to other beneficiaries. Joseph completed his apprenticeship and then died; and Sir William Grant decided that the substituted limitation was disappointed, the event of death *after* completing the apprenticeship not being a satisfaction of the condition of death before that time. In *Doo* vs. *Brabant*, 3 *Bro. C. C.*, 393, a legacy was given in trust for Sarah Counsell, until she attained the age of twenty-one, and then to her absolutely;

but in case she died *under* twenty one, leaving children, then in trust for them. Sarah arrived at majority, married, and died before the testatrix, leaving children, and it was held that the children did not take, the condition applying to to death *under* and not *over* twenty-one. Lord Kenyon said: "If this event had occurred to the testatrix, most probably she would have provided for it, and given the money to the children; but, as she has not done so, we cannot make a will for her." In *Williams* vs. *Jones*, (1 *Russell C. R.*, 517), there was a bequest to Thomas Williams, if he should be living at the death of the testator's wife, and if *not*, then to his son, Thomas Playfair Williams. Thomas Williams *was* living at the death of the testator's wife, and Lord Gifford decided that the limitation to his son could not therefore take effect, and the father having died before the testator, the legacy lapsed.

The principle of these cases, that by the death of a legatee before the testator the bequest lapses, and that a gift over can only take effect upon the contingency designated in the will, is well recognized in the law as elementary doctrine. I have cited authorities mainly to show the application of the rule by other Judges. It is ordinarily supposed that a lapse defeats the testator's intention. In one sense it certainly does, for the design of benefiting the legatee personally is utterly defeated by his death. The law proceeds on the assumption that all bequests are intended for the individual named, and for none other; and if he be dead when the testator dies, the gift falls, and no one can take in his stead, unless the contingency has been provided for. I am therefore of opinion, that the share of John Henderson in one half of the residue of this estate, lapsed by reason of his decease before the testator, and that his sister is not entitled to it by survivorship, because the event on which the will declares the survivor should take, never occurred. The testator lived several years after the death of Mrs. Henderson and her son. He knew of their decease, and I am bound to presume he knew the law on this subject, and was satisfied it should take

its course. The gift of the other half of the residue of his estate to his niece, Mrs. Norman, also lapsed in his lifetime, by reason of her death; and the reasonable presumption is, that he was cognizant of the effect of these circumstances, and was content that the lapsed legacies should enure to the benefit of his next of kin, who stood as near to him as the claimant. In any event, that is the effect of the rule of law which it is my duty to apply; and there must be sentence of distribution of three fourths of the estate among the four nieces of the testator, his nearest of kin, *per capita.*