## MOSELY, executor &c., *appellant, vs.* MARSHALL and others, *respondents.*

The general rule, in equity, is that a tenant for life must keep down the interest of any mortgages upon the life estate.

At common law, the personal property of a decedent was the primary fund out of which all his debts were to be paid. This rule, as respects real estate subject to a mortgage, has been changed in this state; and when such real estate descends to an heir, or passes to a devisee, the heir or devisee is to satisfy the mortgage, unless there be an express direction in the will of the testator, that the mortgage be otherwise paid.

This provision of the statute makes the land subject to a mortgage the primary fund for the satisfaction of the mortgage; and the executor is not to be resorted to, by the devisee, for the satisfaction of the mortgage.

The executor should not make any voluntary payments of interest upon mortgages incumbering property devised to an individual for life, unless expressly directed to do so, in the will.

A testator, after devising to his wife for life certain premises known as "the Mansion House," and all the rents, issues and profits thereof, directed that all the rest and residue of his personal estate, not before disposed of, be applied in payment of his debts and liabilities (excepting such as were secured by mortgage upon his dwelling house,) and that the remainder of his debts, over and above what could be paid thereby, should be and remain a charge upon his said Mansion House property, to be paid therefrom after the life estate of his wife therein; and for that purpose he empowered his executors, if practicable, to defer the paying of any existing mortgage on said Mansion House during the lifetime of his wife, or to make a loan or loans for the payment of the same, and to secure said loan or loans by mortgage on said premises, to be paid therefrom after the decease of his wife. The amount of the mortgages upon the Mansion House, at the testator's death, was about $12,000. This was the only real estate which passed to the remaindermen under the will, and the net annual income from it was about $4000. *Held*, that the testator did not intend that his executors should provide for the payment of the interest upon the mortgages on the Mansion House; the language employed having reference to the remainder of the debts, viz, the principal, and not the interest to accrue after the testator's death.

And it was *further held* that the executor upon his accounting before the surrogate, was not entitled to be allowed for moneys paid by him as interest upon the Mansion House mortgages, during the life of the widow: DAVIS, P. J. dissented.

APPEAL from a decree of the surrogate of Erie county, made upon the accounting of an executor. The facts are sufficiently stated in the opinion.

Mosely *v.* Marshall.

*E. C. Sprague,* for the appellant.

*Rogers & Ganson,* for the respondents.

MARVIN J. Bela D. Coe made and published his last will in March, 1852. He was then in his sixty-third year, and contemplated a tour in Europe. He visited England and died in London November 26, 1852, leaving Elizabeth W.: his widow, him surviving. He left no descendants. It will be necessary to refer pretty fully to the will, as the principal question in the case arises upon it, and the decision depends upon the construction to be given to the will.

By the first clause, the testator gives and devises to his wife Elizabeth W. and to her heirs and assigns forever, his dwelling house and lot of land, with the appurtenances, situate &c. subject to any mortgage lien which may exist thereon at the time of his decease. He also gave and devised to her, for and during the term of her natural life, all those premises known as "the Mansion House," in the city of Buffalo, being &c. with their appurtenances, and all and several the rents, issues and profits thereof. The third clause is thus: "I will and direct that all the rest and residue of my personal estate of every kind, not hereinbefore disposed of, be applied in payment of my debts and liabilities, (excepting that which is secured by mortgage on my said dwelling house,) and that the remainder of my said debts, over and above what can be paid thereby, be and remain a charge on my said Mansion House property, to be paid therefrom after the life estate of my said wife therein ; and for that purpose I hereby empower my executors hereinafter named, if practicable, to defer the paying of any existing mortgage or mortgages on said Mansion House property during the lifetime of my said wife, or to make a loan or loans for the payment of the same or any part thereof, and to secure said loan or loans by mortgage on said premises, to be paid therefrom after the decease of my said wife." By the subsequent clauses, the rest, residue, remainder and reversion of

his estate are disposed of. He appointed Wm. A. Mosely and others his executors. Mosely alone qualified. In January, 1854, he married the widow, and she died on the 5th of April, 1855, in her 56th year.

The only real estate which passed to the remaindermen under the will, was the Mansion House property; the net annual income from this property was about $4000, and it was the only productive real estate, aside from the homestead, owned by the testator, at the date of the will or afterwards. The amount of the mortgages upon the Mansion House property was $12,000. The executor's account contains credits to himself for moneys paid as interest upon the bonds accompanying the mortgages upon the Mansion House property, amounting to $2526.30. The surrogate disallowed these items and charged the executor with the interest, $350.12, upon them. Whether the surrogate was correct in so deciding, is the principal question in the case.

On the part of the executor, it is insisted that the widow took, under the will, a life estate in the Mansion House property, and the rents, issues and profits thereof, free from any duty or obligation to pay the interest upon the incumbrances. The remaindermen and contestants insist that she was bound to pay the interest upon such incumbrances during her life; or rather that she was bound to keep down the interest upon any balance there should be of these incumbrances, after the executor should have applied, in payment of the principal, all the moneys in his hands after paying the other debts of the testator.

It should be stated that there were three mortgages; one of $4000, due August 1, 1853; one of $2000, due May 1, 1856, and one of $6000, due August 3, 1864.

It is not disputed that the general rule in equity is that the tenant for life must keep down the interest of any mortgages upon the life estate. Kent says: " In estates for life, if the estate be charged with an incumbrance, the tenant for life is bound, in equity, to keep down the interest, out of the

rents and profits; but he is not chargeable with the incumbrance itself, and he is not bound to extinguish it." (4 *Kent's Com.* 74. 1 *Hil. on Real Prop.* 10. 5 *Ves.* 107.)

At common law the personal property of the deceased was the primary fund, out of which all his debts were to be paid. This rule, as to real estate subject to a mortgage, has been changed in this state; and when such real estate descends to an heir, or passes to a devisee, the heir or devisee is to satisfy or discharge the mortgage, unless there be an express direction in the will of the testator, that the mortgage be otherwise paid. (1 *R. S.* 749, § 4.) This provision makes the land subject to a mortgage the primary fund for the satisfaction of the mortgage, and the executor is not to be resorted to, by the devisee, for the satisfaction of the mortgage. From this provision it is clear that the executor should not have made any voluntary payments upon the mortgages incumbering the Mansion House property, unless expressly so directed in the will. This brings us to the will, and the question is to turn upon the construction to be given to it.

In construing wills, if there is any ambiguity or doubt as to the intention of the testator, it is important to consider the condition of the estate and the parties affected by the will, with a view of ascertaining the intentions of the testator. When such intentions are ascertained, they are to prevail, if not in conflict with settled rules of law.

The question in this case arises under the third clause in the will. The testator, by a previous clause, had devised to his wife, for life, all those premises known as " the Mansion House," and all the rents, issues and profits thereof. In the third clause he wills and directs that all the rest and residue of his personal estate, of every kind, not before disposed of, be applied in payment of his debts and liabilities, (excepting that which was secured by mortgage upon his dwelling house.) Thus far there is a general direction for the appli-

cation of the residue of his personal estate to the payment of his debts and liabilities, except the incumbrance upon his dwelling house. This direction included all his debts, and undoubtedly embraced the debts secured by mortgage upon his Mansion House property. But he contemplated a deficiency in his personal estate to pay all his debts. He continues : "and that the remainder of my debts, over and above what can be paid thereby, be and remain a charge upon my said Mansion House property, to be paid therefrom after the life estate of my said wife therein." I think that it is equally clear that the testator supposed that his personal estate would be sufficient to pay all his debts, not secured by the mortgages upon the Mansion House property. He speaks of the remainder of his debts *being and remaining* a charge upon the Mansion House property. He did not contemplate any deficiency of property to pay all his debts, except the Mansion House property debt; and he may have contemplated enough to pay a portion of this latter debt. His language is entirely consistent with the idea that there would be personal estate enough to pay all his other debts and a portion of the debts secured by the Mansion House property. It is, however, clear that he contemplated that there would not be sufficient to pay off the mortgages upon the Mansion House in full; and as he directed that such remainder of his debts should be and remain a charge on that property, to be paid therefrom, after the life estate of his wife therein, it was obvious that it might become necessary, in case the life estate should not terminate before the debts secured by the mortgages upon the Mansion House should become due, that new loans should be made, or arrangements entered into with the mortgagees for deferring the payment of the mortgages, and he thus proceeds : "and for that purpose, I hereby empower my executors, if practicable, to defer the payment of any existing mortgage or mortgages on said Mansion House property, during the lifetime of my said wife, or to make a

Mosely *v.* Marshall.

loan or loans for the payment of the same, or any part thereof, and to secure said loan or loans by mortgage on said premises, to be paid therefrom after the decease of my said wife." What had the testator in his mind? Of what was he speaking? Clearly of the *remainder of his debts,* that were to be and remain a charge upon the Mansion House; and *for the purpose* of continuing such remainder a charge upon that property, without payment, until after the death of his wife, he conferred power upon his executors to defer payment, if practicable, or to make a loan or loans. In my opinion he had no thoughts of, or reference to, the interest accruing semi-annually upon the mortgages then upon the Mansion House, or those that might be given by his executors upon a loan or loans. He says nothing about interest. We may suppose that he knew that by the law the life tenant was bound to keep down the accruing interest, and hence there was no necesssity of saying any thing in relation to interest.

It is argued by the able counsel for the executor, that the terms " debts and liabilities " include the interest as well as the principal; and as the will directs the payment of all debts and liabilities, the executor was bound to pay the interest; and that as the remainder is made a charge, not to be paid till after the death of the wife, and there being no discrimination between the principal and interest, both are included and postponed. " Debts and liabilities " undoubtedly include all that was accruing at the decease of the testator; and, as I have before intimated, it was the duty of the executor to exhaust the personal estate in the payment of any and all debts and liabilities. This would include interest that had accrued at the death of the testator, and as much of the principal of the mortgage debts as there was personal estate to pay.

In speaking of the state of things after his personal estate should be exhausted, he uses the language, the *remainder* of my debts. I do not claim that he uses the term debt in its

primary, technical, legal sense, as indicating a sum of money
" due," but he uses it in reference to the sums owing by him,
whether such sums shall have become due at the time of his
death or not. And in this sense " the remainder of my
debts" embraced the amounts owing upon the bonds secured
by the mortgages upon the Mansion House. But can it be
said to include, by a natural construction, the interest that
should accrue after his decease, upon these bonds ? Interest
is a sum paid by the borrower to the lender for the use of
money. Time is an element in the contract, and there can
be no debt or liability for interest until the principal, by the
lapse of time, has earned the interest. I admit that interest
may be incident to the debt, and the executor or administra-
tor is, by the law, bound to pay interest upon debts carrying
interest, which may accrue after the death of the testator or
intestate. But in the case before us, we are endeavoring to
ascertain what directions the testator gave in his will, touching
the interest that should accrue upon the Mansion House debts,
and if we can find no *express directions*, then the law disposes
of the question, by declaring that the life tenant shall pay
the interest accruing during her term, out of the rents, issues
and profits. In my opinion the testator did not intend that
his executors should provide for the payment of interest upon
the Mansion House debts, and that no such construction
should be given to the language employed by him. The lan-
guage is natural and appropriate in reference to the debts—
the principal of the bonds and mortgages.

In my opinion, the testator could not have contemplated
that his executors should resort to a loan or loans, every six
months, to provide the means for paying interest. Mrs. Coe
was about fifty-two years old when the testator made his will.
Can it be possible that he contemplated that this debt of
$12,000 should go on increasing during her life, upon the
principles of semi-annual interest compounded ? She might
live ten, fifteen, or twenty years. Calculate the amount of

Mosely *v.* Marshall.

the debt, at either of these periods, and what would the re-
mainder have been worth ? It is probable, taking the longest
period, that it would not be worth one dollar. I admit such
suggestions are of no weight against clear directions in the
will; but in the absence of such directions, or in a case of
doubtful intention, we are at liberty and should look to the
consequences of any suggested construction; and if it leads
to absurdity, or to results which we may suppose the testa-
tor could not have had in his mind, and which might defeat
the object of the testator, they should induce the court to
search for some other interpretation of the language employed.
I do not admit this to be such a case. In my opinion the
fair construction of the language employed has reference to
the remainder of the debts—meaning the principal, and not
the interest to accrue after his death. I may remark further
on the language. His executors are authorized to *defer* the
payment of the existing mortgages, or to make a loan or
loans for the payment of the mortgages. He knew that no
arrangement could be made to *defer* the payment of the mort-
gages unless the interest should be promptly paid as it ac-
crued; and yet he makes no provision for paying interest. He
speaks of a loan or loans. There were three mortgages. He
seems to have contemplated that his views might be carried
out by *a loan*—a single loan—and yet if he had contemplated
the payment of interest, every six months, he would have
known that repeated loans would be necessary.

An argument was adduced, pro and con, founded upon the
will as evincing his intentions touching the style of living
of his widow, &c. He gave her the homestead, with all the
personal property pertaining to it. He had expended about
$4000 a year in living, and it was argued he intended she
should have about the same amount. Very little reliance
can be placed upon such arguments. But it is clear that
he made very liberal provision for his wife. The income
from the Mansion House property was about $4000 a year,

and the interest upon the mortgages was $840, thus leaving to her a net income of over $3000 a year. But I will not pursue these remarks.

It will be seen that I agree with the surrogate in the position that Mrs. Coe was bound to keep down the interest upon the incumbrances upon the life estate, yet I think the surrogate has erred in the application of the principle, and in the details of the accounts, &c. He has charged the executor, as a misapplication, with all the money, $2526.30, paid as interest upon the bonds and mortgages, amounting to $12,000, including interest which had been earned and had accrued prior to the death of the testator, $303.33, as will be readily seen by a computation. He has also charged him for the money paid for interest which accrued subsequent to the termination of the life estate, and he has charged him interest upon these payments. He is undoubtedly accountable, in some form, for all the assets that came to his hands, but not in the manner stated by the surrogate.

As between the executor and the life tenant, the former was in equity bound to pay, out of the assets, the interest on the bonds and mortgages up to the time of the testator's death, upon the principles of apportionment. The life tenant was only bound to keep down the interest during her term. (*Story's Eq. title Apportionment, and* § 479 *et seq.*) In equity the interest is regarded as accruing every day, for the purpose of settling the equities between different parties. The sum of $303.33 was properly paid by the executor, for interest that had accrued prior to the testator's death. The will directed that all the rest and residue of the testator's personal estate should be applied in the payment of his debts and liabilities, (except the mortgage on dwelling house,) and the remainder is to remain a charge on the Mansion House property. Now it is entirely clear that after all the other debts should be paid, the residue of the personal estate was to be applied on the mortgages incumbering the Mansion House

Mosely *v.* Marshall.

property. And the life tenant, as well as the remaindermen, had an interest that such application should be made, and that the principal of these bonds and mortgages should be reduced as low as possible. The principal being reduced, the life tenant would have a less amount to pay to keep down interest, and the amount to be paid by the remaindermen would be less, when they came into possession. Considering the age of the life tenant, and the probable continuance of her life, her interest in having the principal of these mortgages reduced, was quite as great, if not greater, than the interests of the remaindermen. The direction in the will is clear, and it is not necessary to stop to inquire what the executor should have done, in case the mortgagees refused to accept payment before the mortgages became due. There was no difficulty about this. He could have kept the residue invested. But, in fact, one of the mortgages became due probably as early as the residue was ascertained. Let us proceed, and if we can ascertain the amount or value of this *residue* of the personal estate at the time of the testator's death, all the difficulty will vanish; for that is the sum that should have been applied to the principal of the three mortgages, and the balance then remaining, as principal upon the mortgages, would be the sum upon which the life tenant would pay interest, and the sum charged upon the remainder. The remaindermen would take the estate thus charged, and this would be all that they would be entitled to. The accounts, as clearly rendered by the executor, furnish us the means, I think, of ascertaining that sum. We have the dates of the payments of the interest, as made by the executor, and any sum paid was a portion of the *residue* of the personal estate, with the interest on such portion to the time of payment. We want to ascertain an amount on the day of the testator's decease, (Nov. 26, 1852,) which would produce the various payments as made by the executor, and such amount is easily ascertained, upon the principles of discount.

The accounts are restated according to the views here expressed, and the decree corrected, and as corrected affirmed.

It is a proper case for the payment of the costs of the parties out of the funds in the hands of the executor.

GREENE, J., concurred.

DAVIS, P. J., dissented.

[ERIE GENERAL TERM, February 8, 1858.    *Davis, Greene* and *Marvin,* Justices.]