RICE, executor, etc., appellant, v. HARBESON *et al.*

*Mortgages — holder of mortgage against estate of deceased person — conflict of law — personal property — lex rei sitæ.*

A citizen of New York died leaving personal property there and real estate situate in South Carolina which was mortgaged. He left a will wherein he directed his estate to be divided among persons therein named. The will was proved in New York and also in South Corolina; in the latter State as a will of personal property only, it not being properly executed to convey real estate, and the real estate descended to the heirs. The heirs, by suit in South Carolina, recovered the real estate and obtained a decree that the executor under the will pay the mortgage out of the personal property. Afterward the executor petitioned the surrogate of New York for a final accounting, and cited the holder of the mortgage who appeared and filed his claim.

*Held,* that the mortgage creditor was not compelled, by 1 R. S. 749, § 4, to resort for payment to the land in the first instance, but might either foreclose the mortgage or resort to the personal property. *Roosevelt* v. *Carpenter,* 28 Barb. 426, followed.

The object of the statute in question was not to interfere with the rights of the mortgage creditor, but to establish an equitable rule among the heirs and devisees.

A court of equity, however, can compel the mortgage creditor to first exhaust his remedy against the mortgaged property, before resorting to the personal estate.

Rice v. Harbeson.

In this case, the existence of a judgment in a court of South Carolina, decreeing payment of the mortgage out of the personal estate, will not accomplish such object here. The judgment has no extra territorial force, and only applies to personal property situated in South Carolina.

A nation within whose territory personal property is situated has as entire dominion over it, while therein, in point of sovereignty and jurisdiction, as it has over immovable property situate there.

THIS is an appeal from part of a decree of the surrogate of New York county upon final accounting.

James Murdock was a citizen and resident of New York when he died, on the 10th June, 1869. In his will he appointed John A. Rice (the appellant) and John Murdock his executors and trustees, " with power to bring all I may die possessed of in America into a divisible shape," and " after all my just debts are paid," to divide the estate into seven shares, and to distribute the shares among his sisters, nephews and neices, naming them.

The testator's estate consisted, at the date of the will, of money, stock, bonds and other personal property of the value of about $17,436.72, and of one lot and building thereon, situated in the city of Charleston, South Carolina.

After the execution of the will, and on or about the 1st of February, 1869, the testator purchased another piece of real estate in the city of Charleston, South Carolina, for which he paid the aggregate sum of $19,000, as follows: cash, $13,000, and executed and delivered to the grantor, Agnes Calder, executrix, etc., a bond and mortgage for $6,000. This mortgage and bond was subsequently assigned by Mrs. Calder to one Forsythe, who afterward, and on the 15th of January, 1872, assigned it, together with the bond, to John Harbeson, one of the respondents.

The testator died seized and possessed of all of the above property. His will was proved in New York as a will of real and personal property, and in South Carolina as a will of personal property only — the laws of that State requiring a will of real estate to be executed before three witnesses, and the testator's will having only two witnesses — and the real estate above mentioned descended to the heirs.

All of the legatees mentioned in the will are aliens except the children of Jane Harbeson, viz.: David Harbeson, Ellen Harbeson and Mary Harbeson, respondents herein, who are the only heirs at law.

These heirs at law brought suit in the court of common pleas in Charleston, South Carolina, against the appellant and others, to recover the said real estate as in case of intestacy. They had a decree, and, also, that the mortgage on the same be paid by the executor, John W. Rice (the appellant), out of the personal assets of the said decedent.

The appellant, in due course, petitioned the surrogate of this county for a final accounting, and asked for a citation to W. C. Forsythe, of Charleston, S. C., as a claimant against the estate. On the return of this citation, John Harbeson (the assignee of the Forsythe mortgage) appeared and filed his claim. Evidence having been taken thereon by the surrogate, and it appearing that there were no personal assets in South Carolina from which the claim could be paid, and it being conceded that there were sufficient personal assets in the hands of the executor in this State to pay it, the surrogate in the decree on final accounting adjudged that the claim be paid by the said executor out of the personalty.

From that part of the decree the appeal was taken.

*Richard O'Gorman* and *George Stevenson*, for appellant. Since the defendant, John Harbeson, brings his mortgage to New York for adjudication, he is governed by the laws of New York. 1 Rev. Stat. 700; Story on Confl. of Laws, §§ 325, 528, 529 (*a*); *Aspden* v. *Nixon*, 4 How. 467; *Smith* v. *Union Bank*, 5 Pet. 452; *Holmes* v. *Remsen*, 20 Johns. 265 (*dictum*); *McElmoyle* v. *Cohen*, 13 Pet. 324.

The record of the South Carolina court is not binding here. *McElmoyle* v. *Cohen*, *supra*. In equity, where one claimant has more than one fund to resort to, and another only one, the first shall first resort to the fund upon which the second has no claim. *Lanoy* v. *Duke of Athol*, 2 Ark. 406; *Lacane* v. *Merteirs*, 1 Ves. 312; Story's Eq. Jur., § 633, etc. The words "after my just debts, etc., are paid," does not charge the legacies. Legacies are debts. 2 Redf. on Wills, 868; 1 Story's Eq. Jur. 601 (*note*).

*Malcolm Campbell*, for respondents.

BRADY, J. The first question to be considered in this case grows out of the statute (1 R. S. 749, § 4), which makes the land the primary fund for the payment of the mortgage of the deceased

mortgagor. It is insisted, by the appellant, that it is controlling upon the mortgage creditor, confining his remedy in the first instance to the land and allowing a resort to the personal estate for a deficiency only. In this view we think he is in error. Prior to the statute the personal estate was the primary fund, and the heir could insist upon its application to the payment of the mortgage, thus acquiring the fee without the burden of the mortgage. The heir or devisee might throw the charge on the personal representative. *Cumberland* v. *Coddington,* 3 Johns. Ch. 229; *Mollan* v. *Griffiths,* 3 Paige, 402. The statute was passed to prevent this seeming injustice. See revisers' note, 3 R. S. (2d ed.) 600. In *Mollan* v. *Griffiths, supra,* the provision was under consideration, but it was held not applicable in that case, because the rights acquired existed prior to its passage. In *Halsey* v. *Reed,* 9 Paige, 454, its effect was considered, and although the case would seem to be an authority for the proposition that it controlled the right of the creditor, that is, the mortgagee or his assignee, to resort to the personal estate prior to the exhaustion of the real estate covered by the mortgage, it was not so expressly declared. The Chancellor said: " The note of the revisors to this section of the statute clearly shows that the intention was to make the premises charged with the mortgage the primary fund for the payment of the debt in all cases between the heir and devisee and the personal representative of the testator or intestate, who had assumed the payment of the debt, except where the decedent by his will had made a different provision for such payment." In other words, the object of this section was to abrogate the rule of this court, which, in certain cases, compelled the representatives of the decedent to pay off incumbrances upon his real estate for the benefit of the heir or devisee of such real estate. In *Johnson* v. *Corbett,* 11 Paige, 265, it was substantially held by the chancellor, that the mortgage creditor could claim from the personal estate only the balance left beyond the value of the real estate upon which the whole debt was a lien, he having in a prior case (*House* v. *House,* 10 Paige, 158) declared that the statute applied as well to cases of absolute intestacy as where the mortgagor had disposed of the whole or a part of his estate by will. In *Mosely* v. *Marshall,* 27 Barb. 42, the provision of the statute under consideration, it was said, makes the land subject to a mortgage the primary fund for the satisfaction of the mortgage, and it was declared that the executor was not to be resorted to by

the devisee for the satisfaction of the mortgage, but the case is silent upon the question of the mortgage creditor's rights as to the remedy he may adopt to collect his claim. In *Taylor* v. *Wendell*, 4 Bradf. 324, the surrogate said: " The provision of the Revised Statutes, that mortgages are not a charge upon the general estate, but the devisee must take the lands *cum onere*, is never disturbed, unless by some clear and express direction in the will;" but the case contains no suggestion as to the mode of enforcing payment. In *Roosevelt* v. *Carpenter*, 28 Barb. 426, however, decided in this district, it was substantially determined that the statute did not impair the rights of the creditor, who could foreclose the mortgage or sue the heirs. The cases in the 9th and 11th of Paige, *supra*, were held to have no application, and the statute was declared to be a regulation as between the heirs and the personal representatives.

The decision in the last case cited is controlling upon this court, and disposes of the question stated. It is in accordance with the spirit of the statute and the intention of the legislature. The note of the revisers, to which attention has been called, sufficiently demonstrates the object in view when it was passed, which was not to interfere with the rights of the mortgage creditor, but to establish an equitable rule among the heirs and devisees by which none of them, to the detriment of others, could call upon the personal estate to discharge a lien upon land to which they took title, either by inheritance or devise, and this view of the statute is foreshadowed in the opinion of the chancellor in the cases cited, notwithstanding the ultimate construction which he adopted. In the application of that statute in this State, it seems quite clear that if the creditor seeks the personal estate to pay the mortgage, the value of the real estate, to the extent of the mortgage, should be considered in the distribution of the estate between the heirs and devisees, so that the result would effect what the statute was intended to accomplish, if the estate were large enough. In other words, the heirs or devisees holding the land would be charged with its value as part of the share to which they would be entitled. In this view, it would in such cases be of little importance in which mode the creditor might seek the payment of his debt. The land being the primary fund, as between the heirs and devisees, would be treated as a part of the general estate, and made to bear its burden.

The estate herein is not large enough, however, to apply this principle, and it cannot be done therefore. It follows from these views

Rice v. Harbeson.

that the remedy of the respondent is not confined to the land, and that he may resort to the personal property, but it does not necessarily follow from that conclusion that the appeal herein cannot be sustained. There are other principles which come into view. Equity frequently interposes between debtor and creditor where there are two funds, as in this case, out of either of which payment may be enforced, adjusting the remedy to the circumstances disclosed. There is natural justice in the exercise of this power as long as it is so administered that the rights of the creditor are not prejudiced. If, for example, a judgment debtor aliens part of his real estate on which the judgment is a lien, a court of equity, on application therefor, will compel the judgment creditor to exhaust the estate remaining in the debtor's hands before selling the part so aliened. *Clowes* v. *Dickenson*, 9 Cow. 403. Or it may be done on motion by the court in which the judgment was obtained. " This," said WOODWORTH, J., " is a clear principle established by all the authorities, and approves itself to the plainest suggestions of natural justice."

The power has frequently been exercised by courts of equity, and is, therefore, a familiar rule. It should be applied here, and the respondent compelled to exhaust his remedy against the land before he can resort to the personal property. In this way the intention of the testator as to the distribution of his estate can be carried out, and the principle of the statute discussed applied. The real estate will then, as designed by the legislature, be made the primary fund for the payment of the mortgaged debt. If the sale of it does not produce funds enough to pay the debt, the respondent can then apply for the payment of the balance out of the personal estate. This will protect his rights and do equity. The testator did not intend that the persons succeeding to the real estate should enjoy it exclusively without its burdens. ·

The existence of a judgment in a court of South Carolina, decreeing the payment of the mortgage out of the personal estate, has no extra territorial force to accomplish the object here. It is in effect a judgment *in rem*, and has no absolute application to any personal property except that within the jurisdiction of the court pronouncing the judgment. Story's Confl. of Laws, § 592. The respondent having applied here for the payment of his mortgage must submit to the laws, which may be invoked either for or against him. It is universally admitted and established that the forms of

remedies and the modes of proceeding and the execution of judgments are to be regulated solely and exclusively by the laws of the place where the action is instituted, or, as the civilians uniformly express it, according to the *lex fori*. Story's Confl. of Laws, § 556. He asks to have personal property applied to the payment of his debt, which is secured by a lien on real estate elsewhere, and we answer him that he must first exhaust that estate. We say that this is in accordance with our settled policy, which, while it does not affect him injuriously, protects the equitable rights of others. We have not been shown that by the laws of South Carolina he may not foreclose his mortgage by reason of the death of the mortgagor, and the laws which govern the estates of deceased persons there — a fact which might affect the question. It is a well-settled rule, as suggested, founded on reason and authority, that the *lex fori* furnishes in all cases, *prima facie*, the rule of decision, and, if either party wishes the benefit of a different rule or law, he must aver and prove it. *Monroe* v. *Douglas*, 5 N. Y. 447. In the absence of such proof we may assume that the law of that State is like our own on this subject, and that he can proceed to foreclose the mortgage as he might do here.

It must be said, in addition to these views, that the personal property being situate here, is subject to such regulations as our laws may establish in reference to its appropriation. It has a *situs* for that purpose. A nation within whose territory any personal property is actually situated has as entire dominion over it while therein, in point of sovereignty and jurisdiction, as it has over immovable property situated there. It may regulate its transfer and subject it to process and execution, and provide for and control the uses and disposition of it to the same extent that it may exert its authority over immovable property. Story's Confl. of Laws, § 550 ; Wheaton's Confl. of Laws, §§ 605, 606, 809, 838.

The laws of this State in relation to a preference in the payment of debts out of the estate of a decedent, by which a foreign judgment would, against such an estate, rank only as a simple debt, and not entitled to a preference with domestic judgments (*Brown* v. *Public Administrator*, 2 Bradf. 103), to attachments against non-resident debtors and to insolvency, illustrate this authority to regulate the legal status of personal property and show its exercise.

This case, being considered in these various phases, renders it obligatory upon us, we think, in the application of our rules of law

and principles of equity, to reverse the decree of the surrogate, or to modify it so far as to provide that the respondent shall exhaust the real estate covered by the mortgage, and on the coming in of the proper proof have payment of any deficiency out of the personal estate.

*Ordered accordingly.*