B. K. HOPE *et als. v.* H. H. WILKINSON.

WILLS. *Legatee. Personal estate. Undivided realty. Subrogation.* A legatee, whose legacy has been absorbed in payment of debts of the estate, is entitled by subrogation to the rights of creditors, to have his legacy out of undivided realty.

FROM DAVIDSON.

Appeal from the Chancery Court at Nashville. T. M. STEGER, Sp. Ch.

T. L. DODD and G. B. GUILD for complainants.

EAST & FOGG, DICKINSON & FRAZER and SMITH & ALLISON for defendants.

FREEMAN, J., delivered the opinion of the court.

This case is as follows: Micajah Wilkinson died in Davidson county, in 1874, possessed of a large estate. He left a will by which he gave to complainants all

his estate, both real and personal, but it was attested
by only one witness, and therefore failed to be effectual
to carry the realty; as to the personalty, however,.
it was good.

The administrators with the will annexed have
proceeded to wind up the estate, and, the bill charges,
have collected $16,894, with a large amount still un-
collected. They have also disbursed considerable sums
in expenses of administration—five or six thousand
dollars or more having been applied to payment of
debts. While conceding that the general rule is, that
the personalty is primarily liable for the payment of
debts, it is claimed by the bill that where there is
no devise of the realty, and it descends to the heir,.
the personalty being given, as in this case, then if
the administrator uses the personalty in payment of
debts, the legatee is entitled to stand in the place of
the creditors whose debts have been paid, and go upon
the undivided realty for reimbursement by subrogation.
In other words, the theory of the bill is, that the
ineffectually devised realty is the primary fund out of
which the debts should be paid in preference to per-
sonalty bequeathed, as has been done in this case, and
that the personalty having been applied to payment
of debts, the legatee is entitled to be reimbursed to
this extent by charging the realty descended with that sum.

The will of Micajah Wilkinson is as follows: "I
give and bequeath to my friends, Blanche Knight, aged
about thirteen years; Micajah Knight, aged about nine.

years; Ida Jane, aged about five years; Sallie, aged about four years; Tom Smiley, aged about one year, all my personal and real estate in the counties of Robertson and Davidson, and all other property of any description, both real and personal, bonds, notes, evidences of debt; and I specially desire and request that Elizabeth Knight shall have out of my estate the sum of two hundred dollars each year, over and above all other claims or creditors. I make this will as a matter of justice and affection."

A demurrer to this bill was sustained by the chancellor, on the ground that the will did not provide for the payment of the debts, that no particular fund was charged with their payment, and no part of the estate exonerated, and no intent indicated by the testator to change the legal order of appropriation of his assets in application to debts; therefore the personalty was the primary fund for their payment, and so complainants not entitled to relief. The Referees, however, report in favor of a reversal of the decree, to which exceptions are filed opening the entire case.

That the personalty as a general rule is the primary fund for payment of debts at common law is beyond question, and this rule is adopted, if not emphasised, in our State by an act of 1827: Thompson & Steger's Code, section 2267, requiring proof of "exhaustion of the personal estate in the payment of debts, before the real assets can be subject to unpaid debts, as against the heir." This is all clear.

We can give no effect whatever to the ineffectual attempt to devise the realty by this will, by way of learning the intention of the testator. Such an effort is not a legal expression of a purpose, and being ineffectual by law, must go for nothing in solving the question for decision: *Hays* v. *Jackson,* 6 Mass., 156.

At common law the realty was only chargeable in the hands of the heir with special debts. But under our system all debts stand in equal degree, and are equally a charge on the legal or equitable assets of an intestate or testator—the principle, however, being still adhered to rigidly that the personalty is the primary fund for this purpose—the land only to be reached in the hands of the heir, in a proceeding under the act of 1827, Code, section 5, cited; or by *sci. fa.,* in either of which modes, however, the heir is to be made party, with the right to show the personalty has not been exhausted, and to insist on its appropriation in exoneration of his estate, if he can do so.

In case there be a will, the same rule prevails, and the creditor is entitled to enforce his debt against the personalty at law in the hands of the representative, regardless of the provisions of the will, if by any process he can reach it. So that, under a judgment and execution in this case, a creditor could have appropriated the entire personalty to the payment of his debt, and the administrator would have been powerless to prevent. The debts then have been properly paid by the administrators in this case, as between

them and the creditor. The question is whether there is an equity, by reason 'of such payment, as between the legatees and the heir, by which the former, whose legacies or bequests have been thus lessened, to have reimbursement out of the realty descended.

In the will before us, there is no exoneration of the personalty in terms from payment of debts, nor is any other fund charged with them. It is simply the case of a general bequest of the entire personalty to the parties named as the special objects of the testator's bounty, while the land descends to the heir, without any legal intention expressed in reference to it.

Courts of equity have established certain rules for marshaling the assets, and for their appropriation, by which the equities of parties are substantially met. The general principle that underlies these is that the assets shall be so appropriated that every claimant shall be satisfied, as far as such assets can, by any arrangement consistent with their respective claims, be applied in satisfaction thereof: Story's Eq. J., sec. 561, vol. 1. If, for instance, a specialty creditor, whose debt in England was a lien on the real estate, receive satisfaction out of the personalty, a simple contract creditor, who had no claim, except on the personal assets, shall, in equity, stand in the place of the specialty creditor as against the real estate so far as the latter has exhausted the personal assets in payment of his debts, and no further; and this because the specialty creditor could go against both personal and real estate, or

against either of them. "His *choice* to defeat the
simple contract creditor, when he might have satisfied
his debt out of the realty, is the basis of this equity":
Story's Eq. J., sec. 562, vol. 1.

"In general, legatees are entitled," says Judge Story,
"to the same equities where the personal estate is ex-
hausted by specialty creditors, for they would other-
wise be without the means of receiving the bounty of
the testator. They are, therefore, entitled to stand in
the place of specialty creditors against real assets de-
scended to the heir—so they are permitted, in like
manner, to stand in the place of a mortgagee who
has exhausted the personal estate in paying his mort-
gage. But their equity will not prevail against a
devisee of the real estate not mortgaged, for he also
takes by the bounty of the testator; and between per-
sons equally taking by the bounty of the testator,
equity will not interfere, unless the testator has clearly
shown some ground of preference or priority of the
one over the other": Story's Eq. J., 565. The prin-
ciple underlying this is, that the bounty of the testa-
tor raises an equity in favor of a legatee that ought
not to be defeated.

So, the bounty of the testator entitles a legatee to
marshal the assets, and the choice of the creditors to
proceed against the personal estate instead of the real
estate descended, shall not preclude the payment of
the legacy: Wait's Act. & Def., vol. 1, 353, for which
is cited *Post* v. *Mackall,* 3 Bland, 486; *Mollan* v.

*Griffin,* 3 Paige, 402; *Robards* v. *Wortham,* 2 Dev.
Eq., 173, and other cases.

This is the principle of the case of *Alexander* v.
*Miller,* 7 Heis., 77, Judge Deaderick says, quoting
from Story's Eq. Jur., Note 5: "If there be *no devise*
of the real estate, but it descends, if the creditor ex-
haust the personalty, then as against the *heir* the lega-
tees may stand in the place of the creditors, and come
upon the real estate which has descended." Further
it is said, it is held that the mere bounty of the
testator enables the legatee to call for this species of
marshaling; and so it was held in that case, irre-
spective of the question whether the legacies were
specific or general, that the legatee had the right to
go on real estate descended in the hands of the heir,
where his legacy had been taken to pay debts.

The principle we think is sound, notwithstanding
there be an uncertainty of decision on the question. The
testator has, in the exercise of his legal right, given
his personalty to a chosen object of his bounty. This
gift is defeated by claims of creditors. Why should
parties who take the realty by descent hold it free
from debt, and thereby practically defeat the will of
the testator?

The principle approved in the above case "that
every will ought to be read, as in effect embodying
the declaration by the testator that the payment of
his debts shall be, as far as possible, so arranged as
not to disappoint any of the gifts made by it, unless

the instrument discloses a different intention," is sound, and covers the question under consideration.

The question simply in such a case is, whether the gift of the testator is a legal and meritorious right, that should be protected, above the right of the mere heir on which the law casts the estate. We think the former the higher claim.

The principle cited from Story, that as between legatees and devisees under the same will, both being equally the object of the testator's bounty, there will be no marshaling, implies and rests on the proposition that the bounty of the testator raises an equity, and where it is shown equally as to both realty and personalty, the equities are equal, one counterbalancing the other. It is equally implied, that if there is a bequest, and no counterbalancing equity in the way of devise of the land, that the bequest itself would raise an equity superior in the legatee to the right of the mere heir.

So, in stating the doctrine on this subject, Mr. Pomeroy, vol. 3, Eq. Jur., section 1135, says: "Property undisposed of by the will is primarily liable to debts, in preference to that which is expressly be-queathed or devised." We need but add, this equity is marked out in all ordinary cases by subrogation, that is, not by postponing the creditor in payment of his debt, but by allowing the legatee who has had his legacy abated or absorbed in payment of debts, to stand in the place of the creditor as to undevised

realty:   See Pom. Eq., p. 75, vol. 3, Note 6.   This is in accord with the case of Alexander, and we think is a sound equity as between the legatees and heirs. The result is, the decree below is reversed, the report of Referees approved, and the case will be remanded for further proceedings.