### D. S. PATTISON et al. *v.* ROBERT JOSSELYN, Comr., etc.

1. CHANCERY PRACTICE—DISCRETION OF THE COURT.—The chancery court has the discretion at the same term at which a final decree is pronounced, for good cause, to alter, modify or set it aside.   This discretion continues over interlocutory orders, so long as the cause is in progress, no matter at what term they may have been rendered, and does not cease till the case terminates in a final decree.   But such discretion is not arbitrary or capricious.   It is defined and regulated by the practice of the court, of which litigants must take notice, at their peril.

2. SAME.—When a demurrer to a bill has been disallowed and reasonable time given for answer, and no answer filed, and afterwards the party complainant refrains from putting defendants in default for a long space of time—as from August till the next June—the court, before admitting an answer to be filed, should demand the most conclusive showing of causes for the delay, accompanied with a meritorious and conclusive answer.   The answer itself should accompany the explanation, so that the court below, and this court on error, may judge of its merits.   Rev. Code, p. 548, art. 57.

3. SAME—ERROR.—Ordinarily, whatever was in the discretion of the chancery court —as are many things in the progress of a cause—cannot be assigned for error.

4. COMMISSIONER'S SALES.—Where the facts are such as to compel the conviction that there has been collusion between a defendant to a decree and the purchaser at a sale, to bring on the sale without complainant's knowledge, and that, so the property was sold, and at a grossly inadequate price, it is no abuse of the chancellor's discretion to set aside and refuse to confirm such sale.

Appeal from the chancery court of Claiborne county. SMILEY, J.

Appellants assign the following errors :

1st. It was error in the court to overrule the demurrer of defendants, and to render the decree made in this cause.

2d. It was error in the court to refuse to set aside the *pro confesso* taken against the defendants on their motion.

3d. It was error in the court to refuse to confirm the sale made herein by the commissioner, Thomas.

*W. & J. R. Yerger*, for the appellants.

We contend that in a case where a suit has been pending and no action of *pro confesso*, or other proceeding taken for a period of ten years, a *pro confesso* and decree taken after such a length of time, if moved for at the same term of the court, and soon after the rendition of the decree, upon grounds showing a good defense, should be set aside and the parties allowed to defend. In this case the cause had been pending for ten years, and no step taken in it.

Mrs. Pattison was a married woman; Wilson, her attorney, had been killed, and she made oath that the writing sued on was executed during her minority, and that she had been informed by her lawyer that the suit had been dismissed, etc. To the same effect is Miss Caldwell's, except that she was not married. Complainant's solicitor denies that he ever consented to dismiss the suit, and the court refused to set aside the *pro confesso* and decree.

Admit that no agreement of dismissal was made, defendants state that they believed that it had been, that they had been so informed. Certainly the cause had been in court for ten years, and no steps taken; there is no denial that the attorney had been killed in the war; there is no denial that they were minors, under twenty-one years, a good defense to the bill, and the court erred in refusing therefore, to grant an opportunity to set up a defense.

On July 6, 1868, S. B. Thomas, the commissioner, made sale of the land, and the same was purchased by F. S. Hunt. Complainant's solicitor knew of the sale, but did not attend it, and now seeks to set the same aside, because sold for a sum greatly below its value, and because not directed to be sold by complainant. There is no proof that the property was sold for less than its value, and as to the point that the sale was

not directed by the complainant, we argue that the commissioner is an officer of the court, and proceeds to act under the direction of the court, and in conformity with the decree, and is not, and should not be, controlled by either complainant or defendants.

*J. S. Morris*, for the appellee.

The final decree against the defendants was rendered upon the bill, exhibits, and *pro confesso.*

The grounds upon which defendants in the court below based their motion to set aside the decree *pro confesso* and the final decree, are set forth in their two affidavits ; and it is submitted that these grounds are wholly untenable, and that the whole record shows the case of appellants in this court to be destitute of merit.    The two payments of $5,000 and $3,000 alleged to have been made by Pattison, are both credited *in full* in the decree taken, and stated under the interlocutory order of the court, for that purpose.    And the final decree is for the *balance*, which the parties have never denied, and do not now deny, to be due.    The defendants were all duly served with process, and appeared and filed their joint demurrer to the bill.    Their demurrer was over-ruled, and defendants allowed sixty days within which to answer.    This was in October, 1856, and defendants' excuse for not answering is, that W. S. Wilson, Esq., their solicitor, was killed at the battle of Gettysburg, eight years afterwards ! But it is respectfully submitted that they might have made their defense, if they had any, in much less time, and through the instrumentality of some other solicitor.    *Vide* Revised Code, p. 547, art. 40.

The war having ended, the chancery court of Claiborne county met on 2d Monday in December, 1865, and again and again, till the June term, 1867.    No answer or defense was made, and complainants proceeded, in the regular way, to have a hearing of the cause, and the necessary decree and statement of account, and final decree for the balance due. And now, for the first time, defendant Pattison comes and

alleges that, " by an agreement with plaintiff," this suit was to have been dismissed ! If this were true, why had not he and his co-defendants, or some of them, taken some steps to have this agreement carried out? Why had they taken no precaution to have a written memorandum of the agreement, either filed among the papers of the cause, or in their own possession? Why had they not some *living* witness of the fact? These questions, so important in themselves, are made doubly so by the fact that Mr. Ellett, complainant's solicitor, swears positively that there never was any such agreement. And it is to be observed that he had no *interest* in the matter. And it is to be observed, further, that the affidavit of Mrs. Pattison and Miss Caldwell does not aver that there ever was, in fact, any such agreement. They only say that such was " *their* understanding," But who negotiated that understanding on behalf of appellants? Certainly *they* did not; because none of them say so, as they certainly would if it were true. Certainly, neither Mr. Wilson nor Mr. Moody, one of whom had died a year or two, and the other four years' before. And who could have negotiated it on behalf of the appellees? No one was authorized to do so but Mr. Ellett, complainant's solicitor, or the commissioner, Mr. Echols, himself. And they both swear that they did not. Besides, it is exceedingly improbable that any person having a good mortgage security, would relinquish it, voluntarily, for no security at all. Indeed, neither Mr. Ellett, as solicitor, nor Mr. Echols, as an officer of the state, would have had any right to make such a stupid " agreement."

In respect to the order of the court setting aside the decree for the sale of the mortgaged premises, it is difficult to comprehend how *and why the final decree should be set aside, and yet the sale, made under that decree, stand!* But this is the ground assumed in the assignment of error, and argument of counsel for appellants.

We submit that it is perfectly clear, from the record and proof, that that transaction was intended as an evasion of the object of the decree, and was, therefore, a fraud. See

the facts set forth in the motion of complainant to set aside the sale, and the affidavits of John H. Echols, treasurer, etc. The commissioner, Thomas, had no right to proceed with the sale except at the request of complainant's solicitor—certainly not *as he did*, without that gentleman's knowledge or consent. Much less had this commissioner any right to sell the land for *state warrants* without directions from the court or solicitor.

All the facts of the case were before the chancellor; and this court will judge whether it was within his "judicial discretion" to set aside the sale and refuse to set aside the decree.

In respect to the alleged "infancy" of Mrs Pattison and Miss Caldwell, particular attention is called to the fact that they do not say that they were infants when this suit was brought, nor at the time when they demurred to the bill.

Article 57 of the chancery act, Revised Code, p. 548, provides that, "where the court shall refuse to set aside a *pro confesso*, and permit answer to be filed," as was done in the present case, "it shall be lawful for the party aggrieved to cause *the same*" (that is the answer to be offered, and the filing of which shall be objected to), "and all the documents or proofs read *or offered*, to be made part of the record by bill of exceptions, and all such matters shall be assignable for error, and examinable by the appellate court," etc. But in this case *no answer was offered* at the hearing of the motion of defendants in the court below, or has *ever* been offered; nor does it appear that any answer was ever prepared or ready for filing; and the probability is, that if further time had been allowed for that purpose no answer would ever have been made. And attention is especially requested to the fact that there is in the record *no bill of exceptions*, as provided for by the article last above cited.

SIMRALL, J. :

Robert Josselyn, state commissioner, on the 25th of August, 1856, filed his bill in the chancery court of Claiborne county,

against David S. Pattison, Jane E. Pattison, and Hannah H. Caldwell, to foreclose a mortgage.

On the 4th of October, the defendants appeared and put in a joint and several demurrer, which, at that term of the court, was overruled, and leave given to answer within sixty days. Ten years afterwards, on the 6th day of August, 1866, at rules (the defendants having failed to answer), the bill was taken for confessed by them. The cause was set for hearing by complainant on bill, exhibits, and *pro confesso,* on the 17th of September, 1866, and continued. At the next term of the court, on the 14th of June, 1867, an order was made referring it to a commissioner to compute what was due the complainant on his debt.

Final decree was made on the 15th day of the same month. On the 17th the complainant filed of record, an admission of a credit proper to be made on the indebtedness, and remitted $1,545 05, leaving the decree to stand for the sum of $4,994 51. At the same term defendants filed two affidavits—one by David S. Pattison, the other by the other two defendants, and made them the grounds of a motion to set aside the *pro confesso* and the final decree. The chancellor declined to open the decrees and permit the defendants to make defense, which is assigned for error in this court.

On the 4th of August, 1868, a sale of the property (lands in Hinds county) was made by S. B. Thomas, special commissioner, to F. S. Hunt. On the coming in of the report of the commissioner, on motion of the complainant, the sale was set aside, and a re-sale ordered. And this also is assigned for error.

1st. It cannot be controverted that the chancery court has the discretion at the same term at which a final decree is pronounced, for good cause, to alter, modify or set it aside altogether. This discretion over interlocutory orders, continues so long as the case is in progress, no matter at what terms they may have been rendered, and does not cease until the case is terminated in a final decree. But it is not an arbitrary or capricious discretion. It is defined and regulated by the

practice of the court, of which all litigants must take notice at their peril. A reasonable time is allowed to prepare and make defense. In extraordinary cases the time may be enlarged. At the return term of the subpœna, the defendants demurred, and sixty days were allowed them to make their answer. Three or four years elapsed before the war interrupted the regular course of the courts, during which time the complainant refrained from putting the defendants in default, and during which they might have put in their answer.

On the 6th of August, 1866, the *pro confesso* was entered, and not until the second term afterwards, to-wit: June, 1867, was final hearing had and decree made. Surely in this long interval of time there was ample room and verge to have brought forward a defense. And it should demand the most conclusive showing of the causes of this long delay, accompanied with an answer meritorious and conclusive in its character, in order to induce the court, at so late a day, to admit it to be made.

The affidavit of D. S. Pattison (who says he was the active manager of this business), states that W. S. Wilson, his original solicitor, was killed at Gettysburg, and that about a year before decree made, he employed Col. Moody, who had also deceased, and through him, but for his death, would have made defense; this defense was that he had mortgaged twenty-five negroes to secure the debt, which were set free by the State of Mississippi. He also claims a credit of a partial payment of $2,000 in addition to that allowed by the commissioner. This last credit was voluntarily allowed on a substituted statement and calculation of the debt, and is included in the *remittitur* entered on the decree. It is very manifest that if these matters had been embodied in a formal answer, filed in due time, and fully proved, they could not have produced a different result.

Jane E. Pattison and H. H. Caldwell set up, in their affidavit, the same matters stated by David S. Pattison, with the additional allegations that it was arranged by their counsel, Mr. Wilson, that the chancery suit was to be dismissed; and

that they were sureties on the notes, and minors when they signed them, and have never confirmed or ratified them or the mortgage.

H. T. Ellett, Esq., at the hearing of the motion, made an affidavit that he never had made an arrangement with W. S. Wilson, Esq., for the dismissal of the suit, and had never heard of it, through him or from any other quarter, until asserted in these affidavits; that he had been the sole solicitor for the complainants, and had never agreed or said to either of defendants, or their solicitor, that the suits would not be prosecuted. In any fair view of the defense proposed, and the counter affidavit, it cannot be affirmed that there was any abuse of discretion in refusing to open the decree. Ordinarily, whatever is in the discretion of the court, as are many things in the progress of a cause, are not the predicate of error. The legislature has, however, provided for a review of the decision of the chancellor in declining to set aside a *pro confesso*, in order to the filing of an answer. Art. 57, Rev. Code, 548, provides " that when the court shall refuse to set aside a *pro confesso* and permit an answer to be filed, it shall be lawful to cause the same (i. e. the answer), and all the documents and proofs read or offered, to be made part of the record, by bill of exceptions, and such matters may be assignable for error," etc. The statute evidently contemplates, in its terms, that the answer shall accompany the application. That the court may determine whether it discloses a substantial and meritorous defense. Not only must the defendant explain his laches, but he must show, on the face of his answer, that he brings merits into the litigation. If he proposes to review the decision of the chancellor in declining to set aside the *pro confesso*, he must bring himself within the terms of the law, and produce in the record the answer he offered to file. It has the appearance of trifling with the solemn proceedings of courts of justice, after the long delay of the complainant to put the defendants in default, to make such an application unattended with the answer desired to be filed. There was no error in

the decision of the chancery court on this application.

2d. The objections made to the confirmation of the sale were, that it was made under a collusive arrangement between the defendants and the purchaser, without the knowledge of the state commissioner or his counsel, and that the price was grossly inadequate. And secondly, that the purchaser had not paid his bid.

The state commissioner in an affidavit read on the hearing of the motion, states that shortly after the final decision, he procured a copy of the decree, that he had never authorized or directed Thomas, the commissioner, to make the sale, nor did he know that the sale had taken place until after it had occurred. That Hunt, who was a purchaser of the premises from Pattison and wife, pending the suit, and subject to the mortgage, was in possession, and bid off the land at the commissioner's sale for the sum of $400, which was less than one-tenth its value—that he, the commissioner, would have bid at the sale, the amount of the mortgage debt. That General Ord, then commanding the military district, including this state, had issued an order prohibiting the sale of land used for agricultural purposes, until after January, 1868. In obedience to this order, and at the request of Pattison and said Hunt; the commissioner did not put the decree in the hands of the commissioner for execution. That Pattison and Hunt urged the commissioner to wait since January, 1868, on the ground that they were taking steps to enjoin the sale, and compel the commissioner to take, in satisfaction of the debt, Mississippi cotton money. That yielding to the representations of Pattison and Hunt, that a sale in the then depressed condition of the country, would be disastrous, he took no steps to bring on a sale, and never communicated with Thomas on the subject. That a copy of the decree was got by Pattison and Hunt, and the sale brought on by them without the knowledge of the commissioner. That he had been informed that a *fiat* for an injunction had been procured.

Complainant also adduced the copy of a bill of injunction brought by Hunt and Pattison, on the 4th of July, 1868.

Among other things, said bill sets up a tender by Pattison, to the state commissioner, on the 14th day of September, 1868, of the amount due on the decree, in what was commonly called cotton money. One the 30th day of July, the judge of the fifth judicial district made a *fiat* for an injunction, according to the prayer of the bill. On the 4th day of July the injunction was issued.

Pattison in his affidavit denies that he applied to the state commissioner to forbear making sale. The land brought at the sale its market value; he took out the injunction, but lost it on the road to Raymond, and did not state to either Hunt or Thomas that such a paper was in existence.

H. T. Ellett, Esq., stated that Pattison told him Saturday before the sale, that it would take place on the 6th of July, but he supposed at the time, and took it for granted, that the sale was advertised at the instance of state commissioner, and that he was aware of it; that he, Ellett, in January preceding, had removed from the state, and was not attending to the case as attorney.

It was said in Mitchell v. Harris* that mere inadequacy of price, apart from other circumstances, will not be enough to set aside a sale before confirmation.

A re-sale will be ordered where there has been fraud or misconduct in the purchaser; fraudulent misconduct or negligence in any person connected with the sale; surprise or misapprehension created by the conduct of the purchaser, or of some person interested in the sale, or of the officer who conducted the sale. Leflore v. Laramy, 22 Barb., 173; 13 Wend., 227; 10 Paige, 243; 3 John. Ch. Rep., 424. Inadequacy of price will be sufficient to set aside the sale if it be so gross as to create an inference of fraud. Elerhart v. Gilchrist, 3 Stockton N. J., 170; Gleen v. Clapp, 11 Gill & J., 1.

The recital of some of the main facts extracted from the record, compel the conviction that the lands were sold for a grossly inadequate price; (two thousand one hundred acres of land in Hinds county for $400—not quite twenty-five cents per

*Supra, p. 314.

acre;) that there was a collusion between Pattison, defendant, and the purchaser, to bring on the sale without the knowledge of the complainant, so as that it might be bought in on their own terms; that on their joint bill of complaint they were prepared with an injunction, issued two days before the sale, to stop it, if it should turn out to be to their interest so to do, and with this injunction, put in the hands of one of them, but lost, as he says, on the road to Raymond, they make no use of it, but permit the sale to go on, and one of them buys in the property. It is remarkable that the debtor should manifest so much anxiety that his property, apparently large and valuable, should be sold for so trifling a sum, and thereby leave himself encumbered with a heavy debt, when it is manifest, on a re-sale, the creditor would make it satisfy his debt. To have permitted this sale to stand would be to allow the defendant and purchaser, by dexterous management, to deprive the creditor of the fruit of his decree.

The reasons offered by the complainant why he delayed in the execution of the decree, are satisfactory, and excuse him from all blame or negligence.

Let the decree be affirmed.