## C. G. PITTMAN v. W. A. MCCLELLAN ET AL.

1. CHANCERY. *Practice. Setting aside a pro confesso.*
   Under the chancery practice of England, and that which generally prevails in the United States, it is discretionary with the court to set aside a decree *pro confesso* or not. But our statute has made it the duty of the court to vacate a *pro confesso*, for "good cause shown, supported by the affidavit of the party, or his solicitor, making the application," and has made the action of the court upon such application subject to review on appeal.

2. SAME. *Practice. Setting aside a pro confesso.*
   When a defendant makes application to have a *pro confesso* set aside, he must exhibit his answer, or must show why he cannot do so, and ask for further time; and, if he does neither, he will not be considered as showing "good cause" for relief.

3. STATUTE OF LIMITATIONS. *Neglect of administrator to sue. Rights of infant distributees.*
   The failure of an administrator to sue on, or collect, a note due his intestate until it has become barred by the statute of limitations, does not affect the infant distributees of the estate, but they may bring suit on such note, within the time limited by the statute, after they become of legal age.

APPEAL from the Chancery Court of Hinds County.

Hon. E. G. PEYTON, Chancellor.

The bill in this case was filed by the appellees to enforce the vendor's lien on a tract of land sold by their father, Silas Pittman, in 1857, for the payment of a note for $1,000, which represented the balance of the purchase-money unpaid. Silas Pittman died in 1859, and the administratrix of his estate failed to collect the note, and allowed it to become barred, as to her, by the statute of limitations. The pleadings show that the complainants, who are the heirs and distributees of Silas Pittman, filed their bill within two years after becoming of legal age. The other facts appear in the opinion of the court.

*T. J. & F. A. R. Wharton,* for the appellant.

1. The affidavit which accompanied the motion of appellant to set aside the decree *pro confesso* against him, and the certificate of Dr. Robert White, so fully establish the fact that appellant was prevented by his own sickness from filing either

.a plea, demurrer, or answer to the bill of complaint, either
.on the first or second rule-day after the summons was served
on him, that we do not consider it necessary to enter upon
any discussion to show that the application to set aside this
.decree was made at the earliest time in which it could be done,
further than to say this was done on the first day of the first
term of the court after such service of process, and after only
two rule-days had intervened. Besides, the main, if not in
fact the only, ground upon which the chancellor overruled this
motion was that it was accompanied by the affidavit of ap-
pellant, which disclosed the facts as to his sickness and as to
his defense against the suit, instead of being accompanied by
.a technical answer to the bill of complaint; and this was done
upon his misapprehension of the force and effect of the
-opinion of the court in *Pattison* et al. v. *Josselyn*, 43 Miss.
373, 380. When properly considered, this opinion cannot be
regarded as authorizing such action, either upon principle or
by reason of any analogy of the facts. In that case the
motion to set aside the decree *pro confesso* was made some
years after the time limited by a decree of the court, within
which he was required to answer the bill of complaint; whilst
in the present case such application was made on the first day
-of the term after the service of process. And the application
in the former case was made at a time when, under article 39,
page 547, of the Code of 1857, the statutes of this state did
not prescribe in what particular mode or manner the "good
.cause" for setting aside such decree should be presented to
the court; whilst, under section 1021 of the Code of 1871,
now such "good cause" is required to be presented to the
.court "by the affidavit of the party, or his solicitor. This
.section 1021 is but a reprint of this article 39 of the Code of
1857, inclusive of the words "without good cause shown"
—in the twelfth line—and adds these original and additional
words in continuation, and after a comma: "Supported by
the affidavit of a party, or his solicitor, making the applica-
tion, and to be filed in the papers of the cause, and to con-

stitute part of the record." A careful comparison of these two statutory provisions will as fully disclose the character of the amendment intended to be made by said section 1021 of the Code of 1871, and of the purposes intended by such amendment, as could be made to appear by any elaborate argument.

Whilst we admit that the decree of the court in the case of *Pattison* et al. v. *Josselyn* was correct, upon the facts as disclosed in the record of that case, we respectfully submit that the opinion of the court should have been predicated upon article 39, page 547, of the Code of 1857, before specially referred to, instead of upon article 57, page 548, of that Code, of which section 1036 of the Code of 1871 is a literal reprint, and which only prescribes the mode and manner for making up the record for revision by the Supreme Court.

2. Having shown that the appellant was prevented by his sickness — the act of God — from filing, a plea, demurrer, or answer before the decree *pro confesso* was made against him, and that it was only necessary for him to show, by affidavit, a meritorious defense against the suit, the remaining question for inquiry and adjudication is, Did this affidavit. disclose such a defense as would, in a court of equity, entitle appellant to the benefit of a full inquiry as to the merits of his defense, either under a plea, demurrer, or answer to the bill of complaint; and we submit that the facts stated in this affidavit, taken as in connection with a demurrer thereto, disclose such reasonable grounds of defense as entitled him to a full hearing on the merits of the case.

In this affidavit appellant denied that his notes to A. J. Morrison had ever been transferred to DeWitt Pittman, as executor of Silas Pittman, and alleged that he had paid each of these notes; and that said Morrison had paid each of the notes he executed for the purchase of the lands, to Silas Pittman, executor, or that the unpaid note was barred by the statutes of limitation. Besides, the bill of complaint admitted that these notes of A. J. Morrison were barred by the statute.

of limitations, by reason of the negligence of Mrs. Elizabeth Pittman, as his administratrix; and it also shows that the relation of vendor and vendee never existed between the appellant and DeWitt Pittman, as executor, etc., of Silas Pittman, which, under repeated decisions of the Supreme Court of this state, is necessary for the purpose of enforcing a vendor's lien.

We are so confident that for these reasons the decree of the chancellor should be reversed, we do not consider it necessary, or even proper, to elaborate these, or assign other, reasons for a reversal of such decree.

*T. J. Wharton,* of counsel for appellant, argued the case orally.

*W. Calvin Wells,* for the appellees, argued the case orally, and made the following points in his brief:

1. A court should never set aside a decree *pro confesso,* regularly taken, unless the motion is accompanied by an affidavit showing cause why defense was not made in proper time, and a sworn answer, showing a meritorious defense. See Code 1871, secs. 1021, 1036; *Pattison* v. *Josselyn,* 43 Miss. 380; 1 Dan. Ch. Pr., 4th ed., 524, 525; *Hearne* v. *Ogilvie,* 11 Ves. Jr. 77; *Emery* v. *Downing,* 21 Beas. 59; *Bank of St. Mary* v. *St. John,* 25 Ala. 566; *Hunt* v. *Walker,* 40 Miss. 593.

2. The sworn answer must accompany the motion, in order that the court may see that there is merit in the defense. Unless the answer shows a meritorious defense, the decree *pro confesso* will not be set aside. 1 Dan. Ch. Pr., 4th ed., 523; *Carter* v. *Torrance,* 11 Ga. 654; *Hunter* v. *Robbins,* 21 Ala. 585; *James* v. *Cresswick,* 7 Sim. 143; *Williams* v. *Thompson,* 2 Bro. C. C. 280; 1 Coxe, 413, and cases above cited.

3. To have made this case an exception to the principles above stated, some good and sufficient reason, addressed to the sound discretion of the court, should have been given why the answer, properly sworn to, did not accompany the motion — which was not attempted.

4. But if mistaken in the positions hereinbefore taken, I

insist that the affidavit accompanying the motion to set aside the *pro confesso* should have shown two things : first, that there was good and sufficient reasons why the defense was not made in proper time ; second, that he had a meritorious defense. The affidavit in this case shows that the defendant was sick on the first and second rule-days, but is utterly silent as to the intervening thirty days. If he was sick during the whole time, the affidavit should have stated it. Again, sickness is not a valid excuse unless it be further shown that the defense could not be made without his presence. *Cole* v. *Hundley*, 8 Smed. & M. 473 ; *McDonald* v. *Myles*, 12 Smed. & M. 279.

5. There were two defenses attempted to be shown in the affidavit, to wit, that the claim sued on was barred by the statute of limitations, and payment. As to limitation, the decedent, father of the appellees (complainants in the court below), sold the lands on a credit, and died while his children were minors. The administratrix neglected to sue on the notes until they were barred by limitation, as to her, and failed to collect them. The heirs bring suit within two years after they become twenty-one years of age. I insist that the statute of limitations did not begin to run against them until they became twenty-one years of age. *Bacon* v. *Gray*, 23 Miss. 144 ; *Fearn* v. *Shirley*, 31 Miss. 304 ; *Anding* v. *Davis*, 38 Miss. 598 ; *Wood* v. *Ford*, 29 Miss. 65 ; *Adams* v. *Torry's Executor*, 26 Miss. 502 ; *Pearson* v. *McMillan*, 37 Miss. 609.

As to the payment insisted on in the affidavit, by comparing the allegations of the bill with the statements of the affidavit, it will be seen that the affidavit does not make any statement with reference to the notes sued on, but if it refers to anything, it is something entirely foreign to this suit.

SIMRALL, C. J., delivered the opinion of the court.

Of the class of interlocutory orders from which an appeal may be taken are the refusal of the chancellor to set aside a *pro confesso* and allow an answer to be filed, or orders allowing the same to be done, and improper refusals to allow an

amendment to be made in the pleadings or proceedings. Code 1871, sec. 1036 ; Code 1857, p. 548, art. 57.

In *Hunt* v. *Walker*, 40 Miss. (1866) it was said by the court, " When a party seeks to amend his bill, he should regularly accompany his motion ＊ ＊ ＊ with the amendment sought to be filed, so that the court may judge of the propriety of allowing the amendment. And no amendment should be allowed not so presented."

In *Pattison* v. *Josselyn*, 43 Miss. 378, the first branch of the statute was considered, and it was held that the defendant ought regularly to bring with his motion the answer which he desired to file.

The complainant has got the advantage of his adversary, by superior diligence in the prosecution of his suit — not an inequitable or unconscientious advantage, but one that is in entire accordance with the practice of the court. It is reasonable, therefore, that the defendant, who wants relief against apparent negligence, should satisfy the court that he is without blame or laches, and that he is ready then to file a meritorious answer ; or, if not then prepared to do so, he should set forth good reasons for further time.

The practice which prevailed in the English Chancery Court, and very generally in this country, is to take off the default, and open the *pro confesso* on terms ; it is a matter of sound discretion to relieve or not, according to circumstances. These terms are that the defendant shall pay costs occasioned by his default, and incident to the relief, and present his answer, so that the court may judge of it. *Hearne* v. *Ogilvie*, 11 Ves. Jr. 76 ; 1 Dan. Ch. Pr., 4th ed., 523 ; *Wagner* v. *Ogilvie*, 3 Paige, 406 ; *Carter* v. *Torrence*, 11 Ga. 655 ; *Magowan* v. *James*, 12 Smed. & M. 448 ; *Wooster* v. *Woodhull*, 1 Johns. Ch. 539 ; *Parker* v. *Grant*, 1 Johns. Ch. 630.

The object of presenting the answer at the time is twofold : first, not to delay the complainant in his suit ; and, second, that the court may see that a meritorious defense is made. In this state statutes have regulated the subject. The

original enactment was : " and such *pro confesso*, so taken, shall not be set aside except upon good cause shown." It was continued in that form in the revision of 1857 (Code 1857, p. 546, art. 39), and was reënacted by the present Code, with the words added, "supported by the affidavit of the party, or his solicitor," which shall be filed in the record and constitute part of the record.

The statute makes it imperative, if " good cause be shown," to set aside the *pro confesso*, and admit the answer. The additional words in the present Code merely prescribe a method of " showing cause." Without these words, the practice had been to make the excuse and explanation by affidavit.

To what extent has the statute changed the practice? First, it has converted what was before very much a matter of discretion into a matter of duty ; so that, if it be not performed, it may, on appeal, be reviewed ; and, second, it has prescribed a mode of supporting the application, to wit, by affidavit. In all other respects the practice remains as before. There is no material difference between the existing law and the former statute. The affidavit under each enactment has been the usual and ordinary method of stating the reasons why a demurrer, plea, or answer was not filed in time. So it is, when statutes have not interfered with the subject.

The case of *Magowan* v. *James*, 12 Smed. & M. 448, was decided under a statute the same as ·in the revision of 1857. In that case the answer was offered with the motion to set aside the default, and after the court had disposed of the reasons assigned for the delay, it proceeded to scrutinize the bill to ascertain whether it made a meritorious defense. The explanations why it had not been filed earlier were embodied in the bill, instead of a separate affidavit. The case is only valuable in this discussion as illustrating what the practice in this state has been.

Whenever a defendant seeks to be relieved from a *pro confesso*, or to amend his pleadings, he ought to exhibit with his application the answer or the amendment. If he does not,

he ought to explain why he cannot do so, and ask for further time. The statute expressly authorizes the court to grant further time, on cause shown. Code, sec. 1022.

Reading the several provisions of the statute together, they present this state of the law : If the defendant is in default, the complainant may take a *pro confesso.* Nevertheless, the *pro confesso* shall be vacated for " good cause ;" and the refusal so to do may be reviewed on appeal. But, in the estimation of a court of chancery, " good cause " has not been shown unless the answer is *then* presented, or unless satisfactory reasons are given why it is not then filed, and further indulgence asked.

If the applicant does not ask further time, the chancellor may well suppose that he is still in default for not *then* presenting his answer, and that he is dealing contemptuously with the rules and practice of the court, for the purpose of delaying his adversary.

We will analyze the " showing " made by the appellant, and see whether it is sufficient.

The summons was returned to the August rules, served. At the September rules the *pro confesso* was taken. At the January term next, on the first day of the month, a motion was made to set aside the *pro confesso,* supported by an affidavit which bears date the 11th of the preceding November. Affiant swore that at the time the order was taken he was prevented by sickness from going to Raymond, employing a solicitor, and filing an answer. He was hindered by the like indisposition in August. He gives no account of his health between the rules-day in August and in September. Nor does he state why he did not prepare an answer between the first Monday in September and the first day of January thereafter — a period of three months. He offers no reason why he did not have an answer when he made his motion, nor did he crave further time to prepare it. He rested his application (as to the reason for not pleading to the bill) purely and solely on the allegation that he was sick on the rules-day in August and

September, offering no reason why he did not prepare his response to the bill between those days, and between September 4th and the succeeding January, so as to make it part of his application.

If he had asked for further time, we cannot doubt the court would have allowed it. If his solicitors stated to the court that they did not understand that they must then have the answer ready, but would file it in a short time, we cannot doubt that a reasonable time would have been extended. But the party chose in this matter to stand on his showing, and he must abide the consequences.

The defense set forth is that if the appellant had not paid the notes executed by him, they are barred by the statute of limitations; either the notes executed by A. J. Morrison or the notes executed by the appellant to A. J. Morrison. The notes executed by appellant to Morrison were never transferred by him, and were fully paid by appellant to Morrison.

The case stated in the bill is that Silas Pittman, the ancestor of the complainants, on September 3, 1857, sold and conveyed to A. J. Morrison certain real estate for $2,130, taking two notes, and the last one, for $1,000, is still unpaid. About July 21, 1858, Morrison sold the land to Calvin G. Pittman for the same price, $2,130.

At the time of this sale it was agreed that Morrison should convey the land to C. G. Pittman, in consideration that DeWitt Pittman would surrender the notes that Morrison had given Silas Pittman, and that C. G. Pittman should give to DeWitt Pittman two notes for like sums and maturities.

In the meantime Silas Pittman had died, and DeWitt Pittman became his executor, and collected the largest of these notes. In August, 1859, he died, leaving uncollected the note for $1,000. This note passed into the hands of Elizabeth Pittman, while administratrix, etc., of Silas Pittman, who failed to collect it or the original corresponding note given by Morrison to Silas Pittman. The said Elizabeth has fully administered on all the property and choses in action of Silas Pittman, de

ceased, except this note ; all the debts have been paid, and this note, or the note of Morrison, is, as against her, barred.

The relief sought is to enforce the vendor's equity on the land, either for the note given by Morrison to Silas Pittman, or the note, for the corresponding amount, given by C. G. Pittman to DeWitt Pittman.

The complainants, the heirs and distributees of Silas Pittman, on the averments of the bill, are not barred, though Elizabeth, the administratrix, is.

These are all the allegations necessary to be consulted in determining the merits of the defense.

Two grounds of defense are relied upon : the statute of limitations, and payment. The affidavit is that the vendor's lien is barred on the notes executed by A. J. Morrison to Silas Pittman, and on the notes executed by the appellant to Morrison ; that the notes he made to Morrison were never transferred, and were paid by him to Morrison. The bill is entirely misconceived. It does not allege that the appellant executed notes to Morrison, but that by agreement with DeWitt Pittman, the personal representative of Silas, the vendor (who was dead), and Morrison and the appellant, the latter might buy the land from Morrison, and execute his notes in the place of Morrison's note, payable to DeWitt Pittman or order, which was accordingly done ; and that neither the original note of Morrison nor the substituted note, for $1,000, has been paid. The bill makes no reference to any transaction involving an indebtedness of the appellant to Morrison, and predicates no relief. Therefore, on the face of the bill, the complainants are not barred of relief. The appellant has disclosed nothing in his affidavit that would give a different complexion to their claim. We understand the affiant as relying upon the lapse of time from the maturity of the debt, in 1859, as making the bar. But the complainants obviate that by special averments.

On the second ground the appellant makes defense to a debt from himself to Morrison ; whereas the complainants are pursuing him as a purchaser from Morrison, with notice of

their equity, and as consenting to stand in Morrison's place; and, also, because DeWitt Pittman, as the personal representative of their ancestor, could not displace the equitable mortgage except by receipt of payment, or as a substituted purchaser in the place of Morrison, and an *assumpsit* to the personal representative of the vendor of the purchase-money. *Pressly, Supt.,* v. *Ellis,* 48 Miss. 580; *Elliott* v. *Connell,* 5 Smed. & M. 106; *Hoggatt* v. *Wade,* 10 Smed. & M. 143. On the right of the complainants to sue, see *Bacon* v. *Gray,* 23 Miss. 144; *Fearn* v. *Shirley,* 38 Miss. 598; *Adams* v. *Torry's Executor,* 26 Miss. 502; *Pearson* v. *McMillan,* 37 Miss. 600.

It is by no means clear that the appellant disclosed a good defense.

The order of the chancellor appealed from is affirmed.