BATES, et al. *v.* McCLELLAN.

Division B. Jan. 7, 1952.

No. 38152 (56 So. (2d) 52)

**F. D. Hewitt,** for appellants.

B. D. Statham, and R. B. Reeves, for appellee.

**F. D. Hewitt,** for appellants in reply.

**Roberds, P. J.**

This is an appeal from the refusal of the chancery court to set aside decrees pro confesso against appellants.

The action was taken under these circumstances:

Ceasar Bates departed this life intestate in 1900, owning, among other lands, the NE¼ of the NE¼ of Section 3, Township 4, Range 9 in Pike County, Mississippi.

Henry McClellan, the appellee on this appeal, filed the bill in this cause, asserting in himself an interest, as one of the heirs of Ceasar Bates, in the lands owned by Ceasar at the time of his death, making defendants to the bill the other heirs of Ceasar Bates, or the grantees

of such heirs, praying for a sale of the lands owned by Ceasar Bates at the time of his death and a division of the proceeds between the parties to the bill.

Jesse Bates was a son and one of the heirs of Ceasar Bates. Jesse departed this life intestate in 1943 leaving as his heirs at law his wife, Alberta Bates, and eight children, one of whom was Laura Bates Gutter. The heirs of Jesse were joined as respondents to the bill. It is the contention of Alberta and Laura Bates that Jesse in his life time became the owner absolute, by adverse possession, of the above described forty acres of land as against the other heirs of Ceasar Bates. That is the issue on the merits so far as appellants are concerned.

The bill was filed herein February 21, 1947. Process was served upon Alberta February 24, 1947, returnable April 21, 1947. She made no appearance, and on April 29, 1947, a decree pro confesso was taken against her. On August 25, 1947, Alberta and three other respondents, acting through Price, Phillips & Alford as counsel, presented to the chancellor a written motion, asking for an extension of time to December, 1947, within which to answer the bill. On August 28, 1947, a decree was entered on this motion granting sixty days additional time to plead, answer or demur "or otherwise make defense herein", but this was granted to the other three movants. Alberta is not mentioned in that decree.

Now, as to Laura, process was not served upon her until December 18, 1947. It was returnable at Rules the second Monday in January, the 12th day, 1948. She made no appearance in the cause and on February 14, 1948, motion for decree pro confesso was made against her, and, on the same day, a decree was entered sustaining that motion.

On February 14, 1948, both appellants, acting through F. D. Hewitt as counsel, filed a motion to set aside the pro confesso decrees which had been taken against them, "for the reasons to be shown on the hearing". Oral

proof was taken upon this motion February 23, 1948. Four witnesses testified.

One of these was Alberta Bates. As a reason for not answering the bill she explained she lived some twenty miles from Magnolia, the County seat; that she was an ignorant Negro woman and knew nothing of court procedure; that Joe Nettles had purchased the NE¼ of the NW¼ of Section 3, but she and the other heirs of Jesse has executed to him, through mistake, a deed to the forty acres here in controversy, lying in the NE¼ of said section, and Nettles had later reconveyed to the heirs of Jesse Bates said forty acres, and she understood the primary purpose of this suit was to straighten out this mistake, to which there was no defense; that Mr. Phillips represented Nettles and she thought Mr. Phillips had to settle the Nettles title before doing anything about her claim. She had come into Magnolia a number of times while the litigation was pending. Also, apparently she had engaged counsel in an endeavor to get an extension of time within which to answer the bill, since Price, Phillips & Alford, attorneys did file on her behalf on August 25, 1947, a motion for such extension of time.

On the merits of her claim she testified, in substance, that after the death of Ceasar Bates her husband Jesse Bates had an oral agreement with the other heirs of Ceasar that Jesse would have title absolute to said forty acres of land as his part of said estate; that she and Jesse had resided on that land as their homestead from the death of Ceasar in 1900 to the death of Jesse in 1943, and she had so resided since the death of Jesse to the time she testified; that she and Jesse had so actually occupied the land for forty-eight years, claiming to be the owners thereof, under said oral agreement; that they had paid all the taxes on the land for those years; that after the homestead tax exemption law was passed they had made applications for and had been granted exemptions on this land as their homestead.

Mr. O. W. Phillips, an attorney, testified he prepared the Nettles deeds from and to the heirs of Jesse Bates. He did not say whether he had, or had not, been employed by appellants.

Laura Bates Gutter testified, in substance, as did her mother, on the merits. She said she was born upon this forty acres of land and had lived thereon all of her life, but when she testified she was residing in McComb. She also said that she came to the courthouse on January 12, 1948, her citation being returnable that day, but she saw no one at the courthouse. Apparently she meant she went up into the court room. She engaged the services of Mr. Hewitt about the first of February. She had also talked to Mr. Phillips about representing her and her mother.

A. Marx identified the homestead applications and the deeds to and from Nettles.

The above witnesses were placed on the stand by appellants. Contestant offered no proof.

It might be added that this hearing was had before final decree was taken, although the final decree is dated February 14th. It was back dated by agreement.

It is urged by appellee that the motion to set aside the pro confesso decrees was properly overruled because the motion did not exhibit an answer, supported by affidavit, disclosing a meritorious defense to the bill. Sections 1286 and 1229, Code of 1942, vest in the chancery court power to grant and to set aside such decrees, and ██ ██ it is true that, as a general rule, the motion must set out a meritorious defense and be supported by affidavit. Pattison v. Josselyn, 43 Miss. 373; Pittman v. McClellan, et al., 55 Miss. 299; Alexander v. Hyland, 208 Miss. 890, 45 So. (2d) 739. But the complainant may waive the formal motion, affidavit and answer. Griffith's Mississippi Chancery Practice, 2d Ed., Sec. 268. Indeed, ██ ██ the manner in which the application is often presented is by a short motion spread on the motion docket and by a statement to the court ore tenus by the

solicitor for the defendant, and if the matter proceeds to final hearing without objection no question can be successfully raised as to form. Griffith, supra. ██ █ Here, while the motion exhibited no answer nor affidavit, it stated the reasons would be shown at the hearing. The reasons were then developed through oral testimony by witnesses on the stand. No objection was made to this procedure by the complainant; the chancellor permitted that procedure to be adopted; the hearing was had nine days after the filing of the motion; complainant cross-examined the witnesses. This, in our opinion, constituted a waiver by complainant of the usual requirement that the motion must set out a meritorious defense and be supported by affidavit.

██ █ The next question is whether appellants, by the testimony they placed upon the stand in support of the motion, set up a meritorious defense to the bill as to this forty acres of land. The testimony is not contradicted. Certainly it strongly tends to establish that Jesse Bates had an oral agreement with the other heirs that Jesse should be the owner of this forty acres as his part of his father's estate, followed by exclusive use and possession thereof, under claim of ownership, paying all taxes thereon, for forty-three years and then such use and possession by his widow from date of his death in 1943 to the time of the trial. Had these facts been set out in an answer, supported by affidavit, attached as a part of the motion, the requirement as to meritorious defense would have been met. Under the procedure here adopted complainant had the additional advantage of being permitted to cross examine the witnesses.

The last question is whether the failure of applicants to answer the bill, under the circumstances of this case, precludes their right to have the decrees set aside. We labor between conflicting desires—on the one hand to uphold an action of the chancellor which is largely within his discretion, and on the other to have the cause decided upon its merits and justice done after a full development

of the facts. The factors to be weighed and considered have been well stated by this Court in these words: "It is argued that the cause shown was not good and sufficient; that mere inattention and forgetfulness cannot be a valid excuse for a failure to discharge a legal duty. This may be true when such inattention or forgetfulness has occasioned a failure which has been injurious to the adverse party, or the action of that party, based on such failure and caused by it, cannot be reversed without injury to him. But when the neglect is in the mere conduct of a suit, and its consequences do not operate injuriously, its condonation by the judge can do no harm except to deprive the adverse party of an advantage which he has secured in virtue of such neglect, and in that case the party guilty of the neglect should not on that account alone be deprived of the means and opportunity of maintaining or defending his rights. The object of the institution of courts is to administer justice according to law, and lawsuits are allowed for that purpose alone. Rules of procedure regulating the conducting of business in courts are instituted solely to facilitate these ends. They are necessary, and their due observance should be enforced by the courts. But it should not be forgotten that they are aids to secure the administering of justice, not shackles to bind courts to the perpetration of wrong. When their non-observance is in a trivial matter, working no injury to the adverse party and not materially impeding the due progress of the cause, the fault should be corrected, and the authority of the court maintained rather by the imposition of costs and the use of other disciplinary agencies than by depriving parties of the opportunity of a fair trial, to secure which such rules are instituted." Yost et al. v. Alderson, 58 Miss. 40.

 The testimony discloses that the applicants are illiterate Negroes. Alberta lived some twenty miles in the country. She went to the courthouse a number of times. She engaged an attorney to file a motion for her

in August. The record does not show the action taken on that. She knew there was an irregularity in the conveyances to and from Nettles. That related partly to the forty acres in question and she understood Mr. Phillips, attorney, would be able to straighten that out, which she thought should first be done. As to Laura, the bill was filed February 21, 1947, and citation was not served upon her until December 18th thereafter. It was returnable at Rules, January 12, 1948. The decree was taken against her February 14th, and that day her counsel filed the motion to set it aside. As to both applicants, it might be re-stated that the motion to set aside was filed before final decree was taken and before adjournment of the court. It should also be observed that no proof was taken on any aspect of this case except in support of the motion as we have above detailed. The final decrees, on the bill of McClellan and the cross bill of Nettles, were taken either upon answers of respondents admitting the allegations of the bill and cross bill or upon decrees pro confesso. Under these circumstances we have concluded that the motions to set aside the pro confesso decrees should have been sustained and a full hearing had upon development of all of the facts. However, we cannot say appellants were free from negligence; therefore, regardless how the cause may finally be decided, applicants should be charged with all costs in the lower court resulting from the filing of the original bill, including the hearing of the motions by the lower court, but not including any costs which have resulted from the cross bill of Nettles.

Reversed and remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.